CRAIN, Judge.
Defendants, Jameelah Raheem and Tahir Raheem, were charged with Possession with the Intent to Distribute Pentazocine (Count I) and Possession with the Intent to Distribute Phenmetrazine (Count II) on September 8, 1982, in violation of La.R.S. 40:967(A).[1] Each defendant pled not *216 guilty. After a trial by jury, responsive verdicts of guilty of Possession of Pentazo-cine (Count I) and guilty of Possession of Phenmetrazine (Count II) were returned as to each defendant. The trial court sentenced each defendant to three years in the custody of the Department of Corrections on each count, the sentences to run concurrently.
FACTS
On September 8, 1982, Detective William Denicola of the Baton Rouge City Police was involved in a metro squad patrol with State Trooper Jay Thompson and Detective Bobby Calendar of the Baton Rouge Sheriffs office. While patrolling, Detective Denicola received a message that one of his contacts, a confidential informant, was trying to reach him. Denicola immediately called this informant who advised him that two black females and one black male were selling drugs “in the hole”, a well known heavy drug dealing area in Baton Rouge. The informant also stated that the suspects were riding in a late model beige Cadillac with Michigan plates and were selling sets of T’s and Blues, the street name for Tal- *217 win (Pentazocine) and Pryribenzamine. He said that if the detective immediately went to Tyler Street the suspects could be found. Having received reliable information in the past from this particular confidential informant which was the basis for arrests and convictions in other drug cases, Detective Denicola decided to follow up on this tip.
He informed the other detectives, and they immediately proceeded to the area. Once there, the police saw the Cadillac and stopped it. The officers drew their weapons, ordered the occupants out of the vehicle, and had them place their hands on the trunk of the vehicle. When defendant, Jameelah Raheem, got out of the car, Detective Calender grabbed a purse that Ms. Raheem was holding close to her body. When he did this, she pulled back but then released the purse. She then went to the rear of the car where the other suspects were standing. Officers Thompson and Denicola conducted a frisk of all three suspects for weapons but none were found. Some bullets and a large wad of cash, approximately twenty-four hundred dollars, were found on Tahir Raheem. Detective Calender, who remained on the passenger side of the car, searched the purse and found a vanilla wafer box approximately twelve inches in height. He opened this box, lifted out the bag containing cookies, and found underneath a large quantity of pills which he recognized as sets of T’s and Blues and preludin tablets. Lab tests later confirmed the pills were sets of Talwin and Pryribenzamine and Preludin (Phenmetra-zine) tablets. He informed the other detectives and the three occupants were then formally arrested and advised of their Miranda rights. The detectives briefly opened the trunk but did not search it or the contents and suitcases inside. Defendants and the other occupant, Anna Smith, were then transported to the East Baton Rouge Narcotics Office. Detective Denico-la drove the Cadillac down to the office.
Once in the station, the officers spoke with defendants. When asked to sign a waiver to search form, Jameelah Raheem consented saying the detectives had caught her and were going to get a warrant anyway. The trunk and bags inside were searched; approximately six hundred sets of T’s and Blues, preludin tablets and a pistol were found. Ms. Raheem’s purse was searched again at the office, and the detectives found a weapon inside.
Defendants filed a motion to suppress physical evidence and statements. After a hearing, the trial court denied the motion, stating that there was probable cause, a valid search, no force or coercion used to obtain the statements and that defendants had been advised of their rights. After trial by jury, defendants were convicted and sentenced.
On appeal, defendants brief the following three assignments of error:
1. The trial court erred in denying defendants’ motion to suppress physical evidence.
2. The trial court erred in denying defendants’ motion for directed verdict of acquittal and motion for new trial based on the lack of sufficient evidence.
3. The trial court failed to comply with statutory sentencing guidelines and imposed unconstitutionally excessive sentences.
The remaining assignments of error were not briefed and therefore are considered abandoned. Uniform Rules of the Courts of Appeal, Rule 2-12.4; State v. Trevathan, 432 So.2d 355 (La.App. 1st Cir. 1983), writ denied, 437 So.2d 1141 (La.1983).
ASSIGNMENT OF ERROR NUMBER 1
In this assignment of error defendants contend the trial court erred when it denied the motion to suppress physical evidence. Defendants argue that the search of Jam-eelah Raheem’s purse went beyond the scope of the limited Terry[2] search. In addition, they maintain that since there was no probable cause to justify an arrest, this was not a search incident to arrest. Final *218 ly, they argue that the drugs found in the trunk are fruits of an illegal search and should be suppressed.
SEARCH INCIDENT TO LAWFUL ARREST
It is well settled that a search conducted without a warrant issued upon probable cause is per se unreasonable, subject only to a few specifically established and well-delineated exceptions. State v. Singletary, 442 So.2d 707 (La.App. 1st Cir. 1983). A search incident to an arrest is a recognized exception to the rule that a war-rantless search is unreasonable. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); State v. Buckley, 426 So.2d 103 (La.1983). The police must affirmatively show that probable cause existed for the arrests or the subsequent search does not fall within the exception. Buckley, 426 So.2d at 107.
When the officers in this case stopped the defendants’ vehicle, drew their weapons and ordered the defendants to place their hands on the rear of the vehicle, an arrest occurred. La.C.Cr.P. art. 201; State v. Commodore, 418 So.2d 1330 (La.1982). The validity of the search which took place after this arrest depends upon the validity of the arrest.
Probable cause to arrest without a warrant exists when the facts and circumstances within the officer’s knowledge, or of which he had reasonably trustworthy information, are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. La.C.Cr.P. art. 213; State v. Edwards, 406 So.2d 1331 (La.1981). Probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Ruffin, 448 So.2d 1274 (La.1984); Commodore, 418 So.2d at 1332; State v. Marks, 337 So.2d 1177 (La.1976).
The information that a police officer obtains from a confidential informant may contribute to the articulable knowledge necessary to establish probable cause; however, the basis for the information and the informant’s reliability, when examined under the totality of the circumstances must be established. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); State v. Brooks, 452 So.2d 149 (La.1984) (rehearing granted, February 15, 1984).
The informant in this case 'was considered to be reliable by Detective Denieo-la, because he supplied trustworthy information which had led to many arrests and convictions over an approximate two-year period of time.
At the motion to suppress, Detective Denicola testified as to what the confidential informant told him as follows:
Q. When you spoke to the pgrson on the telephone what did that person convey to you that caused you to take action?
A. That subject told me that they were in the hole which is known to be Tyler Street which is a heavy, uh, known dope dealing location. We have arrested many a subject in that area for selling narcotics. Told me that they had three subjects in a Cadillac with Detroit plates on it, Michigan plates, that the Cadillac was beige and around a ’79 or ’80 the subject told me. Told me that if we got down there that we could catch them with a heavy quantity of narcotics. No further conversation, I was in a hurry to get back in the car and get down there. Told them to keep me posted, get back with me or I would get back with them concerning the bust if we made it.
The above information was corroborated by the officers’ subsequent observation obtained in the course of their investigation:
As we came on Minnesota Street we were northbound, the Cadillac came off of Tyler eastbound and turned northbound on Minnesota in front out [sic] car, in front the unit. They turned right immediately on the next *219 street. We came up behind them and we put the lights and sirens on them and pulled up on the side of the car at which time they stopped. Detective Calender and Jay exited the vehicle right away and identified themselves as police officers and we got the three subjects out of the car.
Q. Now the car that ya’ll stopped was it a beige Cadillac?
A. It was and had Michigan plates, I think, it was WVD867.
Q. Was it a 1979 or 1980 Cadillac?
A. It was a 1980, beige Cadillac deVille.
Q. Did he give you any description as to who would be in the Cadillac?
A. Said two female — black females and one black male.
Q. The car that you stopped what was the sex and race of those people?
A. Two black females and one black male.
Q. Did you observe whether or not you — did you observe any other Michigan plates on any vehicles in the hole other than that one?
A. No, we did not.
Q. How far — as the car was coming up and turning in front of you could you see down Tyler Street?
A. You could see all the way down Tyler Street, it’s a dead end; it deads in [sic] at a canal and the canal runs right behind it. And I don’t recall any other cars on that street at that time.
From the foregoing facts, we conclude that the tip supplied by the informant who had proved to be a reliable source of information in the past, corroborated by the presence of the defendants in a vehicle which was described in detail and found in the exact location described by the informant, provided the necessary probable cause for a valid arrest. This entitled the officers to stop the vehicle and search the defendants without first obtaining a search warrant.
Thus, we find that the motion to suppress the physical evidence was properly denied by the trial court. In view of our finding that a legal arrest was made, we find the trial court was also correct in denying the motion to suppress the evidence obtained from a search of the defendants’ vehicle made after Ms. Raheem signed a consent to search form.
ASSIGNMENT OF ERROR NUMBER 2
In this assignment of error, defendant, Tahir Raheem, contends there is insufficient evidence to support his conviction. He contends the trial court erred in denying a motion for a directed verdict of acquittal, a motion for new trial and in accepting a verdict contrary to the law and/or evidence.
The standard of review for sufficiency of the evidence is found in La.C. Cr.P. art. 821. That standard is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Mathews, 375 So.2d 1165 (La.1979); State v. Norman, 448 So.2d 246 (La.App. 1st Cir.1984); State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983); cf State v. Captville, 448 So.2d 676 (La.1984).
In narcotics and drug offenses, possession may be established by a proof of the defendant’s actual or constructive possession. In order for a person to constructively possess a drug, he must either own it or have “dominion or control” over it. State v. Tasker, 448 So.2d 1311 (La.App. 1st Cir.1984).
After reviewing the record we com elude that a rational trier of fact could infer that the drugs were subject to Tahir Raheem’s dominion and control. Jameelah Raheem was in possession of a sizeable quantity of drugs in her purse. There was also a large quantity of drugs found in the trunk. Although the jury returned a responsive verdict of possession, given the amount of drugs it certainly could have found the intent to distribute. Defendant, Tahir Raheem, was not a casual acquaintance. He was related to the co-defendant and had traveled with her from Detroit. *220 Nor was he merely present where the drugs were found; he was riding in the car in a known drug dealing area. Furthermore, when frisked, he was found to have a few thousand dollars of cash in his possession.
Thus, we find there was sufficient evidence to conclude that defendant, Tahir Raheem, constructively possessed the illegal drugs.
ASSIGNMENT OF ERROR NUMBER 3
In this assignment of error, defendants contend the sentencing judge failed to comply with the requirements of La.C.Cr.P. art. 894.1 and imposed an excessive sentence.
Defendants argue that the trial judge failed to consider the factors in article 894.1 and improperly reasoned that probation was impractical due to defendants being out-of-state residents.
The trial court is not required to enumerate each factor under article 894.1. State v. House, 444 So.2d 265 (La.App. 1st Cir. 1983). After reviewing the record we find that the trial court noted several mitigating factors. There was compliance with La.C. Cr.P. art. 894.1.
Defendants also contend that the trial court relied on an amendment to the criminal statute which increased the length of sentence which may be imposed. Here the trial court did not impose a longer sentence because of the subsequent legislative amendment to the statute; the judge merely noted the legislative enactment. In any event, legislative action which increases or decreases the penalty for an offense after it was committed may be considered by a court as representing a legislative determination relative to the seriousness of the offense. State v. Schaeffer, 414 So.2d 730 (La.1982) (concurring opinion); State v. Phillips, 412 So.2d 1036 (La.1982); State v. Wright, 384 So.2d 399 (La.1980). The sentence imposed was within that authorized for the crime at the time of its commission.
We do not find an abuse of the trial court’s much discretion in sentencing. State v. House, 444 So.2d at 266.
DECREE
For the foregoing reasons, we affirm the convictions and sentences of the defendants.
AFFIRMED.

. At the time of the offense charged, La.R.S. 40:967 provided:
*216 A. Manufacture; distribution. Except as authorized by this part, it shall be unlawful for any person knowingly or intentionally:
(1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule II;
(2) To create, distribute, or possess with intent to distribute, a counterfeit controlled dangerous substance classified in Schedule II.
B. Penalties for violation of Subsection A. Except as provided in Subsections E and F hereof, any person who violates Subsection A with respect to:
(1) A substance classified in Schedule II which is a narcotic drug, shall be sentenced to a term of imprisonment at hard labor for not less than five years nor more than thirty years; and may, in addition, be sentenced to pay a fine of not more than fifteen thousand dollars;
(2) Any other controlled dangerous substance classified in Schedule II shall be sentenced to a term of imprisonment at hard labor for not more than ten years; and, in addition, may be sentenced to pay a fine of not more than fifteen thousand dollars.
C. Possession. It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance as classified in Schedule II unless such substance was obtained directly, or pursuant to a valid prescription or order from a practitioner or provided in R.S. 40:978, while acting in the course of his professional practice, or except as otherwise authorized by this Part. Except as provided in Subsections E and F hereof, any person who violates this Subsection shall be imprisoned with or without hard labor for not more than five years; and, in addition, may be sentenced to pay a fine of not more than five thousand dollars.
F. (1) Except as otherwise authorized in this Part, any person who knowingly or intentionally possesses twenty-eight grams or more, but less than two hundred grams, of cocaine or related substances as provided in Schedule 11(A)(4) of R.S. 40:964, shall be sentenced to serve a term of imprisonment at hard labor of not less than five years, nor more than thirty years, and to pay a fine of not less than fifty thousand dollars.
(2) Except as otherwise authorized in this Part, any person who knowingly or intentionally possesses two hundred grams or more, but less than four hundred grams, of c'ocaine or related substances as provided in Schedule 11(A)(4) of R.S. 40:964, shall be sentenced to serve a term of imprisonment at hard labor of not less than ten years, nor more than thirty years, and to pay a fine of not less than one hundred thousand dollars.
(3) Except as otherwise authorized in this Part, any person who knowingly or intentionally possesses four hundred grams or more of cocaine or related substances as provided in Schedule 11(A)(4) of R.S. 40:964, shall be sentenced to serve a term of imprisonment at hard labor of not less than fifteen years, nor more than thirty years, and to pay a fine of not less than two hundred fifty thousand dollars.
G. (1) Except as provided in Paragraph (2) hereof, with respect to any person to whom the provisions of Subsections E and/or F are applicable, the adjudication of guilt or imposition of sentence shall not be suspended, deferred, or withheld, nor shall such person be eligible for probation or parole prior to serving the minimum sentences provided by Subsections E and/or F.
(2) The district attorney may move the sentencing court to reduce or suspend the sentence of any person to whom the provisions of Subsections E and/or F are applicable who provides substantial assistance in the identification, arrest or conviction of other parties or conspirators to the crime for which he was convicted or to related crimes. The arresting agency shall be given an opportunity to be heard in reference to any such motion. The court may reduce or suspend the sentence if it finds that the defendant rendered such substantial assistance.
The statute was amended by Act 602 of 1982, effective September 10, 1982, two days after this offense was committed.

. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).