GRISBAUM, Judge.
The defendant, William T. Tyler, pled guilty to possession of marijuana with intent to distribute, in violation of La.R.S. 40:966, reserving his right to appeal the trial court’s denial of his motion to suppress under State v. Crosby, 338 So.2d 584 (La.1976). The trial court sentenced the defendant to three years in the custody of the Department of Corrections, with credit for time served. We affirm.
The sole issue presented is whether the trial court erred in its denial of the motion to suppress.
PROCEDURAL HISTORY
On October 9,1987, William T. Tyler was charged by bill of information with possession of marijuana with intent to distribute, in violation of La.R.S. 40:966. The defendant was arraigned on November 13, 1987 and pled not guilty. On April 15, 1988, the court heard the defendant’s motion to suppress and took the matter under advisement, ultimately denying the motion on April 18, 1988. After the denial of the motion to suppress, the defendant withdrew his not guilty plea on October 28, 1988, and entered a guilty plea, reserving his right under State v. Crosby, supra to seek appellate review of the trial court’s denial of the motion to suppress. After entering into a Boykin colloquy with Tyler and his retained counsel, the trial court accepted the Crosby plea and sentenced the defendant.
FACTS
On May 29, 1987, Detective Richardson of the Kenner Police Department telephoned fellow Detective Barry Armond and asked Armond to meet him at the New Orleans International Airport to assist in a narcotics investigation. Armond is a 14-year veteran of the Kenner Police force assigned to the narcotics division. When Armond arrived at the airport, Richardson advised him of information received from the Kenner City Police Department that an individual fitting a certain description and arriving at the airport aboard a particular flight would be carrying illegal drugs. Richardson further informed Armond that he had asked the U.S. Customs Office to conduct an inspection with one of its drug detection dogs of the baggage from the arriving flight.
The two detectives waited for the arrival of the flight at the boarding/departure gate. When the flight arrived, an individual fitting the exact description previously provided to Richardson came off the aircraft. The detectives placed the suspect under observation and followed him *26 through the airport terminal to the baggage claim area, never losing sight of him.
The suspect entered the baggage claim area, picked up a suitcase from the baggage conveyor, and walked toward the exit for the claim area. As soon as the suspect left the baggage claim area, the two detectives approached him and identified themselves as police officers. Armond told the suspect that the detectives were investigating a narcotics complaint and that he fit the description of the person alleged to be carrying illegal drugs. The detectives then asked the suspect if he would consent to a search of his suitcase. The suspect made various statements about the suitcase, including that the luggage was not his and that he was merely picking up the suitcase for a friend. According to Armond’s testimony, the suspect never consented to a search of the luggage. Armond further testified that, after the suspect was approached, the detectives would not have allowed him to leave had he been so inclined.
At the time Armond approached the suspect he was aware of the information conveyed by Richardson regarding the suspect’s description, the arrival flight data, and the request that the U.S. Customs Office conduct a baggage inspection by a drug detection dog. Armond did not personally know the identity of the Kenner City Police Department representative who had provided the information to Detective Richardson. Nor was Armond personally aware of the fact that, prior to the detectives’ initial approach of the suspect, the U.S. Customs drug detection dog had inspected the baggage from the flight and had “alerted” on the suitcase claimed by the suspect, thereby indicating the presence of narcotics in the luggage. It is impossible to establish what information Richardson possessed at the time of the initial approach, since he did not testify at the hearing on the motion to suppress. The sole witness to testify at the hearing was Armond.
After the suspect told the detectives he was picking up the suitcase for a friend, Armond asked the suspect to produce some identification. The suspect responded that he did not have any identification with him. The detectives noticed and removed a wallet from the suspect’s back pocket. The wallet contained a driver’s license, identifying the suspect as William T. Tyler. The detectives also removed a luggage key from Tyler’s person. Richardson made another request for Tyler’s consent to search the suitcase. When Tyler responded that the luggage was not his, Richardson opened the suitcase and discovered about 12 pounds of marijuana in it. The detectives then formally placed Tyler under arrest.
ANALYSIS
ARREST
In order for us to determine, in a proper fashion, whether the trial court erred in its denial of the motion to suppress, we must closely examine the encounter to determine whether there was an actual arrest and to ascertain whether the warrantless search subsequent thereto was a lawful one.
La.C.Cr.P. art. 201 states, “Arrest is the taking of one person info custody by another. To constitute arrest there must be an actual restraint of the person. The restraint may be imposed by force or may result from the submission of the person arrested to the custody of the one arresting him.” In State v. Bourgeois, 388 So.2d 359, 363 (La.1980) the court states:
The statutory definition of “arrest” is keyed to the concept of restraint. It is the circumstances indicating an intent to effect an extended restraint on the liberty of an accused, rather than the precise timing of an officer’s statement: “You are under arrest,” that are determinative of when an arrest is actually made. State v. Tomasetti, 381 So.2d 420 (La.1980); State v. Marks, 337 So.2d 1177 (La.1976); State v. Warren, 283 So.2d 740 (La.1973). In the instant case, we are convinced that defendant was arrested when he was stopped by Agent Egan as he attempted to leave the airport and was taken by Egan to his office for questioning. Defendant was unmistakably restrained; he was under arrest. The fact that defendant was not verbally ad *27 vised that he was under arrest until after the suitcase was subsequently opened does not alter the fact of arrest.
The test for determining when a suspect is “in custody” is the objective standard of the “reasonable interrogee” under the totality of the circumstances. State v. Liner, 397 So.2d 506, 513 (La.1981). Neither the defendant’s subjective impression nor the formality of an official arrest will be determinative of the issue of a claimed illegal detention. State v. Thibodeaux, 414 So.2d 366 (La.1982). A review of Louisiana jurisprudence concerning this issue can be found in State v. Freeman, 503 So.2d 753, 757-58 (La.App. 3d Cir.1987).
In brief, Tyler contends that the actions of Richardson and Armond constituted an arrest, “as his liberty was clearly restrained.” We note the following record facts occurred before the suitcase was opened. The detectives approached Tyler, identifying themselves and indicating they were investigating a narcotics complaint. They told Tyler he fit the description of the person they were told would be carrying narcotics. Although they did not tell Tyler he was under arrest at that point, they clearly made him aware he was the focus of the investigation. Then the detectives asked Tyler for consent to search the suitcase, and Tyler refused. When asked to produce identification, Tyler said he did not have any. The detectives then removed his wallet from his back pocket and located a driver’s license in his wallet. They also removed a suitcase key from his person. Again, the detectives asked Tyler for consent to search the suitcase, and again, Tyler refused. Had Tyler tried to continue on his way during this sequence of events, the detectives would not have allowed him to leave. Although Tyler was questioned in public and was never brought to a room for interrogation, we agree with Tyler’s contention that his liberty was “clearly restrained.” Ergo, we conclude that an actual arrest occurred prior to the search and seizure.
PROBABLE CAUSE
We now turn our inquiry to whether the State proved it had probable cause to arrest Taylor. La.C.Cr.P. art. 213(3) states, “A peace officer may, without a warrant, arrest a person when: The peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer....” Additionally, the Loiiisiana Supreme Court in State v. Raheem, 464 So.2d 293, 296 (La.1985) noted that
Probable cause to arrest without a warrant exists when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Tomasetti, ... [381 So.2d 420 (La.1980) ].
When articulating the “totality of the circumstances” approach to probable cause in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court stated that an informant’s “ ‘veracity,’ ” “ ‘reliability’ ” and “ ‘basis of knowledge’ ” are all highly relevant in determining the value of his report. The Supreme Court made it clear that these elements should not be viewed as “entirely separate and independent requirements to be rigidly exacted in every case,” and that should be viewed as “closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is ‘probable cause’ to believe that the contraband or evidence is located in a particular case.” Gates, supra, 103 S.Ct. at 2328. Both the U.S. and Louisiana Supreme Courts have recognized the value of corroboration of details of an informant’s tip by independent police investigation. See Gates, supra, 103 S.Ct. at 2334 and Raheem, supra, at 296.
*28 In Gates, supra, 103 S.Ct. at 2334, the U.S. Supreme Court stated:
Our decision in Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), however, is the classic case on the value of corroborative efforts of police officials. There, an informant named Hereford reported that Draper would arrive in Denver on a train from Chicago on one of two days, and that he would be carrying a quantity of heroin. The informant also supplied a fairly detailed physical description of Draper, and predicted that he would be wearing a light colored raincoat, brown slacks, and black shoes, and would be walking “real fast.” Id., at 309, 79 S.Ct., at 331. Hereford gave no indication of the basis for his information.[12]
On one of the stated dates police officers observed a man matching this description exit a train arriving from Chicago; his attire and luggage matched Hereford’s report and he was walking rapidly. We explained in Draper that, by this point in his investigation, the arresting officer “had personally verified every facet of the information given him by Hereford except whether petitioner had accomplished his mission and had the three ounces of heroin on his person or in his bag. And surely, with every other bit of Hereford’s information being thus personally verified, [the officer] had ‘reasonable grounds' to believe that the remaining unverified bit of Hereford’s information — that Draper would have the heroin with him — was likewise true,” id., at 313, 79 S.Ct., at 333.
The court went on to say:
“[B]ecause an informant is right about some things, he is more probably right about other facts,” Spinelli v. United States], 393 U.S. [410], at 427, 89 S.Ct. [584], at 594 [21 L.Ed.2d 637 (1969)] (WHITE, J., concurring) — including the claim regarding the Gateses’ illegal activity. This may well not be the type of “reliability” or “veracity” necessary to satisfy some views of the “veracity prong” of Spinelli, but we think it suffices for the practical, common-sense judgment called for in making a probable cause determination. It is enough, for purposes of assessing probable-cause, that “[c]orroboration through other sources of information reduced the chances of a reckless or prevaricating tale,” thus providing “a substantial basis for crediting the hearsay.” Jones v. United States, 362 U.S. [257], at 269, 271, 80 S.Ct. [725], at 735, 736 [4 L.Ed.2d 697 (1960)].
Gates, supra, 103 S.Ct. at 2335.
In State v. Geraci, 518 So.2d 554, 559 (La.App. 5th Cir.1987), this Circuit examined a similar factual scenario and concluded as follows:
All aspects of the informant’s tip turned out to be correct and all were corroborated by the officers. The observations and additional investigation of the officers further corroborated the confidential informant’s tip and provided enough additional facts for this court to conclude that probable cause for arrest existed under the test of “totality of the circumstances” even considering the restrictive view imposed by the Louisiana Supreme Court [in Raheem, supra, and in State v. Ruffin, 448 So.2d 1274 (La.1984)].
In light of our jurisprudential guidelines, we must now determine whether the officers had probable cause for the arrest and subsequent warrantless search and seizure. From the outset it is patently clear that Tyler was not arrested merely because of his presence at the airport. To the *29 contrary, Armond testified Richardson informed him that an individual aboard a designated flight and wearing certain described articles of clothing was carrying narcotics. Of equal importance, we note that Armond knew that Richardson had obtained this information from someone in the Kenner Police Department, not a confidential informant. We conclude that the arrest was a by-product of sensible police interactivity resulting in a practical, commonsense judgment that probable cause to arrest existed. Viewing the chronological scenario at the airport in light of the totality of the circumstances, we conclude that probable cause for the arrest existed under the test of “totality of the circumstances,” even considering the restrictive view imposed by the Louisiana Supreme Court.
For the reasons assigned, the judgment of the trial court is affirmed.
AFFIRMED.

. The tip in Draper might well not have survived the rigid application of the "two-pronged test” that developed following Spinelli. The only reference to Hereford’s reliability was that he had "been engaged as a ‘special employee’ of the Bureau of Narcotics at Denver for about six months, and from time to time gave information to [the police for] small sums of money, and that [the officer] had always found the information given by Hereford to be accurate and reliable." 358 U.S., at 309, 79 S.Ct., at 331, Likewise, the tip gave no indication of how Hereford came by his information. At most, the detailed and accurate predictions in the tip indicated that, however Hereford obtained his information, it was reliable.