464 So.2d 293 (1985)
STATE of Louisiana
v.
Jameelah Malik RAHEEM and Tahir Malik Raheem.
No. 84-K-1729.
Supreme Court of Louisiana.
February 25, 1985.
*294 Gail Horne Ray, Baton Rouge for defendant-applicant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Walter Reed, Dist. Atty., Kay Kirkpatrick, Richard Chaffin, Asst. Dist. Attys., for plaintiff-respondent.
*295 MARCUS, Justice.
Tahir Malik Raheem and Jameelah Malik Raheem were charged in the same information in separate counts with possession with intent to distribute pentazocine and phenmetrazine in violation of La.R.S. 40:967(A). Defendants' motion to suppress was denied by the trial judge. After trial by jury, defendants were found guilty of possession of pentazocine and phenmetrazine and were sentenced to three years at hard labor on each count to be served concurrently. Defendants appealed. The court of appeal affirmed their convictions and sentences.[1] On defendants' application, we granted certiorari primarily to review the correctness of the denial of the motion to suppress.[2]
Evidence adduced at the suppression hearing reveals that on September 8, 1982, at about 1:30 p.m., Detective William Denicola, State Trooper Jay Thompson and Detective Bobby Calender were on patrol when Detective Denicola received a radio message that one of his confidential informants was trying to reach him. He immediately telephoned the informant who told him that two black females and one black male were selling a large quantity of drugs "in the hole," a known drug dealing area in Baton Rouge. The informant stated that the suspects were riding in a late model beige Cadillac with Michigan plates and that if Detective Denicola went immediately to Tyler Street the suspects could be found. Detective Denicola had received reliable and trustworthy information from this informant in the past that had led to many arrests and convictions.
The police officers immediately proceeded toward the area. As they approached Tyler Street, the officers saw a beige Cadillac with Michigan plates turn off Tyler onto Minnesota Street directly in front of their car. After following for a short distance, they stopped the Cadillac using lights and siren. With guns drawn, the officers ordered the three occupants, two black females and one black male, out of the car and had them place their hands on the vehicle. When Ms. Raheem got out of the car, Detective Calender grabbed a purse that she was holding close to her body. She resisted at first but then released the purse. Detective Calender then searched the purse and found a vanilla wafer box about twelve inches in height. He opened the box, removed the bag inside containing the cookies, and found underneath a large quantity of pills which he recognized as sets of T's and Blues, the street name for talwin (pentazocine) and pyribenzamine. He advised the other officers of what he found and told them to place the three occupants under arrest. Trooper Thompson conducted a pat-down search of Tahir Raheem which produced some bullets and cash totaling about $2,400. The three occupants were then formally arrested, advised of their Miranda rights, and transported to the East Baton Rouge Narcotics Office. The Cadillac was also taken to the narcotics office.
Once at the narcotics office, Ms. Raheem informed the police officers that she owned the Cadillac. Trooper Thompson asked her if she would consent to a search of the car or would she rather that the police get a search warrant. Ms. Raheem consented to the search and signed a waiver form at 2:08 p.m. The officers searched the car's trunk and the suitcases inside it. The search produced a large quantity of pills which the officers recognized as sets of T's and Blues and preludin (phenmetrazine) tablets. A revolver was also found in the trunk and a later search of Ms. Raheem's purse produced another gun.
Defendants contend that their arrests were unlawful due to a lack of probable cause; thus, the seized evidence was unconstitutionally obtained.
It is well settled that a search conducted without a warrant issued upon probable cause is per se unreasonable, subject only to a few specifically established and well delineated exceptions. Schneckloth *296 v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). One of these exceptions is a search incident to a lawful arrest made of a person and the area in his immediate control. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). But, in order to justify a search as incident to an arrest, an arrest must have already occurred and the arrest itself must have been lawful. State v. Tomasetti, 381 So.2d 420 (La.1980). An arrest is lawful when it is based on probable cause. State v. Burton, 416 So.2d 73 (La.1982). Finally, when the constitutionality of a warrantless search is at issue at a suppression hearing, the state must bear the burden of affirmatively showing that it was justified under one of the exceptions to the warrant requirement. State v. Tomasetti, supra.
In order to ascertain the validity of the seizure of evidence from Ms. Raheem's purse, we must determine when the defendants were actually arrested and whether the arrests were based on probable cause.
An arrest occurs when the circumstances indicate an intent to effect an extended restraint on the liberty of the accused, rather than at the precise time an officer tells an accused he is under arrest. See La.Code Crim.P. art. 201; State v. Tomasetti, supra. In the instant case, when the officers stopped the Cadillac, drew their weapons, ordered defendants out of the car, and had them place their hands on the vehicle, an arrest occurred. The fact that defendants were not verbally advised of their arrest until after Detective Calender searched Ms. Raheem's purse does not alter the fact of arrest.
Probable cause to arrest without a warrant exists when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Tomasetti, supra. In the instant case, the information on which police relied to establish probable cause came from a confidential informant. Prior to Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), courts mechanically followed the "two-pronged" test of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), to determine whether information from a confidential informant established probable cause. Under this test, it was necessary to show facts relating to the informant's "basis of knowledge" and his "veracity" or "reliability." In Gates, the United States Supreme Court abandoned an inflexible application of this test in favor of a "totality of the circumstances analysis." However, although the informant's "veracity" or "reliability" and his "basis of knowledge" are no longer controlling, they are still relevant factors in the totality of the circumstances examination. As stated by the Court in Gates:
[A]n informant's "veracity," "reliability" and "basis of knowledge" are all highly relevant in determining the value of his report. We do not agree, however, that these elements should be understood as entirely separate and independent requirements to be rigidly exacted in every case.... Rather, ... they should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is "probable cause" to believe that contraband or evidence is located in a particular place. [Footnotes and references omitted.]
Corroboration of details of an informant's tip by independent police investigation is also valuable in applying the totality of the circumstances analysis. Illinois v. Gates, supra.
In the instant case, the informant's veracity was established by the fact that he had supplied information in the past that *297 had led to many arrests and convictions. However, the informant did not set forth the basis of his knowledge or how he knew that defendants were selling drugs. There is no indication in the informant's tip that the informant had personal knowledge of any of the information provided. Detective Denicola explained that the informant did not tell him how he obtained the information during their phone conversation because he (Denicola) was in a hurry to get back to his car and follow up on the tip. The tip did indicate that defendants would be on Tyler Street in a late model beige Cadillac with Michigan plates, and this was corroborated by the police officers as they arrived in the area. While the corroboration of these details of the tip adds to the informant's veracity, it does not indicate that defendants were engaged in any illegal activity. In fact, from the time that police officers first observed the car until they stopped it, the occupants were not observed doing anything that was suspicious or criminal in nature. When asked, "[w]ould it be correct to say that from the time that you first observed their vehicle until the time you stopped it you observed no criminal activity in connection with that car," Trooper Thompson answered, "[t]hat's correct." Consequently, except for their presence in a known drug dealing area and the informant's wholly conclusionary statement that the defendants were selling drugs, no articulated facts connected defendants with unlawful activity. Hence, under the totality of circumstances presented, we conclude that there was no probable cause for the defendants' arrests. See State v. Ruffin, 448 So.2d 1274 (La. 1984).[3] Accordingly, since defendants were illegally arrested, the evidence seized from Ms. Raheem's purse was unconstitutionally obtained and should have been suppressed.
Next, we must determine whether Ms. Raheem's consent to the warrantless search of her car was so tainted by her earlier illegal arrest and search of her purse as to require the suppression of the evidence seized pursuant to that consent.
One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search conducted pursuant to consent. State v. Owen, 453 So.2d 1202 (La.1984). When made after an illegal detention or search, consent to search, even if voluntary, is valid only if it was the product of a free will and not the result of an exploitation of the previous illegality. Among the factors considered in determining whether the consent was sufficiently attenuated from the unlawful conduct to be a product of a free will are whether the police officers adequately informed the individual that he need not comply with the request, the temporal proximity of the illegality and the consent, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct. State v. Owen, supra; State v. Zielman, 384 So.2d 359 (La.1980); State v. Bennett, 383 So.2d 1236 (La.1980) (on rehearing).
In the instant case, Ms. Raheem was subjected to an illegal arrest and search of her purse at about 1:30 p.m. She, thereafter, consented to a search of her car and signed a waiver form at 2:08 p.m. This short time period between the illegal acts and her consent weigh against a finding of attenuation, especially in view of the fact that there were no intervening circumstances which would tend to show that Ms. Raheem was acting of her own free will. She was continuously in the *298 presence of police officers and her consent was given while under arrest and in the confines of a police station. Under the circumstances presented here, we cannot say that Ms. Raheem's consent was sufficiently attenuated from the illegal arrest and search to be a product of her free will. Accordingly, since Ms. Raheem did not validly consent to the search, the evidence seized from her car should have been suppressed.
In sum, we find that the court of appeal erred in affirming the denial of the motion to suppress. Hence, defendants' convictions and sentences must be reversed.

DECREE
For the reasons assigned, defendants' convictions and sentences are reversed, defendants' motion to suppress is granted and the case is remanded to the district court for further proceedings in accordance with law.
WATSON, J., dissents. The police would have been derelict in their duty if they had failed to act.
LEMMON, J., dissents and assigns reasons.
LEMMON, Justice, dissenting.
A reliable informant told the police that two black females and one black male were selling a specific type of drugs in large quantities in an area known for drug activity and that the police could find them in a late model beige Cadillac with Michigan plates on Tyler Street if a unit were sent there immediately. Because the informant was reliable and because the immediacy of the report of very detailed information indicated it was based on first-hand knowledge and therefore reliable, the officer who proceeded immediately to Tyler Street and observed two black females and a black male in a beige Cadillac with Michigan plates had probable cause to stop and search the vehicle.
NOTES
[1] 454 So.2d 214 (La.App. 1st Cir.1984).
[2] 459 So.2d 528 (La.1984).
[3] In State v. Ruffin, 448 So.2d 1274 (La.1984), a reliable informant told police that Ruffin had in his possession a stolen check, that he was standing on the corner of 38th Street and Cain Street in Baton Rouge, and that he was trying to get someone to help him cash the check. The informant did not indicate how he obtained this information. Ruffin's location was corroborated by police investigation, but the police officers observed nothing that would indicate that Ruffin was engaging in any illegal activity. Police officers arrested Ruffin and, during a search incident to his arrest, evidence was seized from him. Applying a totality of the circumstances examination, we found that there was no probable cause for Ruffin's arrest.