470 So.2d 608 (1985)
STATE of Louisiana
v.
Janice SHEPHERD.
No. KA 84 1345.
Court of Appeal of Louisiana, First Circuit.
May 29, 1985.
*609 Ossie Brown, Dist. Atty. by Mike Nunnery, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
*610 Warren Hebert, Baton Rouge, for defendant-appellant.
Before COLE, CARTER and LANIER, JJ.
LANIER, Judge.
The defendant, Gances Marie "Janice" Dixon Shepherd,[1] was charged in a bill of information with one count of possession with intent to distribute pentazocine in violation of La.R.S. 40:964, Schedule II (D)(2), and 40:967(A)(1) and (B)(2) and one count of possession with intent to distribute phenmetrazine in violation of La.R.S. 40:964, Schedule II (C)(3), and 40:967(A)(1) and (B)(3). She filed a motion to suppress contending the drugs for which she was charged were unlawfully seized without a warrant, probable cause or exigent circumstances in violation of her constitutional rights. After a hearing, the district court denied the motion to suppress. Subsequently, the defendant pled guilty to the first count of the information, possession with intent to distribute pentazocine, and reserved her right to contest the ruling on the motion to suppress on appeal. State v. Crosby, 338 So.2d 584 (La.1976). The State dismissed the second count of the information and dismissed another bill of information charging her with counts of possession of phenmetrazine and diazepam. The defendant was then sentenced to four years at hard labor in the custody of the Louisiana Department of Corrections without benefit of parole, probation or suspension of sentence. This appeal followed.

FACTS
At approximately 6:00 p.m. on February 23, 1984, Lt. Samuel A. Pruit of the Baton Rouge City Police Department received a telephone call from a confidential informant (CI). The CI had given information over a three year period on "numerous other cases" which resulted in three or four arrests (one of which involved preludin coming from California). The CI said Janice Shepherd would leave her home on Scenic Highway in a few minutes and drive to her mother's home on Washington Avenue to pick up thirty sets of T's and Blues (the street name for pentazocine [Talwin] and pyribenzamine). The CI also indicated Shepherd would exit the interstate on Washington Street[2] and would deliver the drugs to an address in South Baton Rouge.
Pruit contacted Detectives Tully Vincent and David Whatley (who were in separate police units) to set up surveillance at Shepherd's home as quickly as possible. Shortly thereafter, the detectives arrived on Scenic Highway and observed Shepherd leaving the house at 1821 Scenic Highway in a maroon and cream 1977 Lincoln Continental. She was accompanied by two small children.
The detectives followed Shepherd to a house in the 2800 or 2900 block of Washington Avenue in North Baton Rouge. (The detectives later learned the house belonged to Martha White, Shepherd's mother.) Shepherd entered the house and remained inside for approximately ten minutes. Shepherd and the children left the house and proceeded to Interstate I-10 and then traveled southbound. The detectives called for assistance of additional units and stopped Shepherd on the Washington Street exit ramp in South Baton Rouge.
Lt. Pruit testified about what happened after Shepherd's vehicle was stopped as follows:
Q You could not see any drugs in the vehicle without actually searching through it?
A There was a napkin on the front seat. That's what they were in.
Q The drugsanswer my question. Were the drugs visible without an officer entering the vehicle and searching it?
A Oh, no.

*611 Q You obtained no consent from Janice Dixon to search her vehicle, did you?
A No.
Q Prior to searching her vehicle, you secured Ms. Dixon from her vehicle and her children also, didn't you?
A Yes.
....
Q I didn't know he moved. Okay. But everybody was secured from the vehicle.
A That's correct.
Q And then the search was conducted?
A Yes.
However, Detective Vincent gave this testimony:
Q What happened once the vehicle was stopped there at the exit off the Interstate at Washington?
A Ms. Dixon was ordered from her vehicle as well as her children or the two kids that were with her. I'm trying to think of what officer took control of Ms. Dixon.
THE COURT: Was the car searched?
A Yes, sir. Through thein the front seat of the car, this is something that I did observe. Detective Whatley looked in on the front seat. There was a piece of aluminum foil laying on the front seat and a napkin that was rolled up on the front seat. Detective Whatley removed these two items from the vehicle and in these particular items, controlled dangerous substances were found.
Q Was there anything else on the front seat other than those two items?
A That's the only two items that I observed Detective Whatley come out of the car with.
Detective Whatley was not called to testify.

VALIDITY OF SEIZURE OF DRUGS
The defendant contends the seizure of the drugs resulted from an unreasonable search because the CI did not reveal the source of the information furnished, citing State v. Ruffin, 448 So.2d 1274 (La.1984).
The State bears the burden of proving the admissibility of evidence seized during a search without a warrant. La.C. Cr.P. art. 703(D). A search conducted without a warrant is per se unreasonable under the fourth amendment, subject only to a few specifically established and well-delineated exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). One of these is the "automobile" exception which is based upon the existence of probable cause to search the vehicle and exigent circumstances which render it impractical to secure a warrant. United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). A second exception to the rule is that a search may be conducted without a warrant when it is an incident to a lawful arrest. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). When the occupant of an automobile is arrested, the police, as a contemporaneous incident of that arrest, may search the passenger compartment of the automobile. New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); State v. Singletary, 442 So.2d 707 (La.App. 1st Cir.1983).
An arrest is defined in La.C.Cr.P. art. 201 as follows:
Arrest is the taking of one person into custody by another. To constitute arrest there must be an actual restraint of the person. The restraint may be imposed by force or may result from the submission of the person arrested to the custody of the one arresting him.
An arrest occurs when circumstances indicate an intent to effect an extended restraint on the liberty of an accused, rather than at the precise time an officer tells an accused he is under arrest. State v. Commodore, 418 So.2d 1330 (La.1982); State v. Wichers, 392 So.2d 419 (La.1980).
A peace officer may lawfully arrest a person without a warrant when he *612 has reasonable (probable) cause to believe that the person to be arrested has committed an offense. La.C.Cr.P. art. 213. Probable cause to arrest exists when facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. Although mere suspicion cannot justify an arrest, the officer does not need sufficient proof to convict. State v. Bell, 395 So.2d 805 (La.1981). Probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. Whether probable cause existed at the time of the arrest must be determined without regard to the result of the subsequent search. State v. Buckley, 426 So.2d 103 (La.1983).
Probable cause can be based on knowledge supplied to an officer by another person, even if the identity of the informant is kept confidential. The test used to ascertain the credibility of a confidential informant who provides facts to support probable cause to make a warrantless arrest is the same as that used to determine the credibility of information derived from a confidential informant which is contained in a search warrant. State v. Edwards, 406 So.2d 1331 (La.1981).
Probable cause to search exists when the facts and circumstances are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched. State v. Huffman, 419 So.2d 458 (La.1982); State v. Williams, 432 So.2d 1003 (La.App. 1st Cir.1983), writ denied, 435 So.2d 439 (La.1983). To determine whether the information furnished by a confidential informant provides probable cause for an arrest or a search, a court must utilize a "totality of the circumstances analysis" and consider, among other things, the informant's veracity, facts relating to the informant's basis of knowledge and corroboration of the informant's information. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); State v. Raheem, 464 So.2d 293 (La.1985).
In Illinois v. Gates, police authorities received an anonymous letter advising the defendants were engaged in selling drugs. The letter also gave some details of a trip to Florida planned by the defendants to obtain drugs and concluded with a statement that the defendants had over $100,000 worth of drugs in the basement of their home in Illinois. Police authorities conducted extensive surveillance of the defendants. The Florida trip predicted by the letter occurred and the surveillance corroborated its details, essentially as predicted by the letter. Based on this, police authorities secured search warrants for the defendants' residence and automobile. A search pursuant to the warrants resulted in the seizure of drugs in both places.
Because the letter was anonymous in Illinois v. Gates, the veracity of the informant was unknown. The contents of the letter did not directly reveal the basis of the informant's knowledge. The police corroborated by surveillance the trip to Florida as predicted in the letter. There was no corroboration of the informant's statements that there were drugs in the Gates' vehicle or residence. In finding there was probable cause for the issuance of the search warrants, the United States Supreme Court observed as follows:
Our decision in Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), however, is the classic case on the value of corroborative efforts of police officials. There, an informant named Hereford reported that Draper would arrive in Denver on a train from Chicago on one of two days, and that he would be carrying a quantity of heroin. The informant also supplied a fairly detailed physical description of Draper, and predicted that he would be wearing a light colored raincoat, brown slacks and black shoes, and would be walking `real fast.' Id., at 309, 79 S.Ct., *613 at 331. Hereford gave no indication of the basis for his information.12
On one of the stated dates police officers observed a man matching this description exit a train arriving from Chicago; his attire and luggage matched Hereford's report and he was walking rapidly. We explained inDraper that, by this point in his investigation, the arresting officer `had personally verified every facet of the information given him by Hereford except whether petitioner had accomplished his mission and had the three ounces of heroin on his person or in his bag. And surely, with every other bit of Hereford's information being thus personally verified, [the officer] had "reasonable grounds" to believe that the remaining unverified bit of Hereford's informationthat Draper would have the heroin with himwas likewise true,' id., at 313, 79 S.Ct., at 333.
The showing of probable cause in the present case was fully as compelling as that in Draper. Even standing alone, the facts obtained through the independent investigation of Mader and the DEA at least suggested that the Gates were involved in drug trafficking. In addition to being a popular vacation site, Florida is well-known as a source of narcotics and other illegal drugs. See United States v. Mendenhall, 446 U.S. 544, 562, 100 S.Ct. 1870, 1881, 64 L.Ed.2d 497 (1980) (POWELL, J., concurring); DEA, Narcotics Intelligence Estimate, The Supply of Drugs to the U.S. Illicit Market From Foreign and Domestic Sources 10 (1979). Lance Gates' flight to Palm Beach, his brief, overnight stay in a motel, and apparent immediate return north to Chicago in the family car, conveniently awaiting him in West Palm Beach, is as suggestive of a pre-arranged drug run, as it is of an ordinary vacation trip.
In addition, the magistrate could rely on the anonymous letter, which had been corroborated in major part by Mader's effortsjust as had occurred in Draper.13 The Supreme Court of Illinois reasoned that Draper involved an informant who had given reliable information on previous occasions, while the honesty and reliability of the anonymous informant in this case were unknown to the Bloomingdale police. While this distinction might be an apt one at the time the police department received the anonymous letter, it became far less significant after Mader's independent investigative work occurred. The corroboration of the letter's predictions that the Gates' car would be in Florida, that Lance Gates would fly to Florida in the next day or so, and that he would drive the car north toward Bloomingdale all indicated, albeit not with certainty, that the informant's other assertions also were true. `Because an informant is right about some things, he is more probably right about other facts,' Spinelli [v. U.S.], supra, 393 U.S. [410], at 427, 89 S.Ct. [584], at 594 [21 L.Ed.2d 637 (1969) ] (WHITE, J., concurring)including the claim regarding the Gates' illegal activity. This may well not be the type of `reliability' or `veracity' necessary to satisfy some views of the `veracity prong' of Spinelli, but we think it suffices for the practical, common-sense judgment called for in making a probable cause determination. It is enough, for purposes of assessing probable cause, that `corroboration through other sources of information reduced the chances of a reckless or prevaricating tale,' thus providing `a substantial basis for crediting the hearsay.' Jones v. United States, supra, 362 U.S. [257], at 269, 271, 80 S.Ct. [725], at 735, 736 [4 L.Ed.2d 697 (1960) ].
Finally, the anonymous letter contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted. The letter writer's accurate information as to the travel plans of each of the Gates was of a character likely obtained only from the Gates themselves, or from someone familiar with their not entirely ordinary travel plans. If the informant had access to accurate information of this type *614 a magistrate could properly conclude that it was not unlikely that he also had access to reliable information of the Gates' alleged illegal activities.14 Of course, the Gates' travel plans might have been learned from a talkative neighbor or travel agent; under the `two-pronged test' developed from Spinelli, the character of the details in the anonymous letter might well not permit a sufficiently clear inference regarding the letter writer's `basis of knowledge.' But, as discussed previously, supra, 2332, probable cause does not demand the certainty we associate with formal trials. It is enough that there was a fair probability that the writer of the anonymous letter had obtained his entire story either from the Gates or someone they trusted. And corroboration of major portions of the letter's predictions provides just this probability. It is apparent, therefore, that the judge issuing the warrant had a `substantial basis for ... conclud[ing]' that probable cause to search the Gates' home and car existed.
12 The tip in Draper might well not have survived the rigid application of the `two-pronged test' that developed following Spinelli. The only reference to Hereford's reliability was that he had `been engaged as a "special employee" of the Bureau of Narcotics at Denver for about six months, and from time to time gave information to [the police] for small sums of money, and that [the officer] had always found the information given by Hereford to be accurate and reliable.' 358 U.S., at 309, 79 S.Ct., at 331. Likewise, the tip gave no indication of how Hereford came by his information. At most, the detailed and accurate predictions in the tip indicated that, however Hereford obtained his information, it was reliable.
13 The Illinois Supreme Court thought that the verification of details contained in the anonymous letter in this case amounted only to `the corroboration of innocent activity,' J.A. 12a, and that this was insufficient to support a finding of probable cause. We are inclined to agree, however, with the observation of Justice Moran in his dissenting opinion that `In this case, just as in Draper, seemingly innocent activity became suspicious in the light of the initial tip.' J.A. 18a. And it bears noting that all of the corroborating detail established in Draper, supra, was of entirely innocent activity a fact later pointed out by the Court in both Jones v. United States, 362 U.S. 257, 269-270, 80 S.Ct. 725, 735-736, 4 L.Ed.2d 697 (1960), and, Ker v. California, 374 U.S. 23, 36, 83 S.Ct. 1623, 1631, 10 L.Ed.2d 726 (1963).
This is perfectly reasonable. As discussed previously, probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to sub silentio impose a drastically more rigorous definition of probable cause than the security of our citizens demands. We think the Illinois court attempted a too rigid classification of the types of conduct that may be relied upon in seeking to demonstrate probable cause. See Brown v. Texas, 443 U.S. 47, 52, n. 2, 99 S.Ct. 2637, 2641, n. 2, 61 L.Ed.2d 357 (1979). In making a determination of probable cause the relevant inquiry is not whether particular conduct is `innocent' or `guilty,' but the degree of suspicion that attaches to particular types of non-criminal acts.
14 ... The magistrate's determination that there might be drugs or evidence of criminal activity in the Gates' home was well-supported by the less speculative theory, noted in text, that if the informant could predict with considerable accuracy the somewhat unusual travel plans of the Gates, he probably also had a reliable basis for his statements that the Gates kept a large quantity of drugs in their home and frequently were visited by other drug traffickers there.
[Underscoring added].
Illinois v. Gates, 103 S.Ct. at 2334-2336.
In Ruffin, the police received information from an extremely reliable confidential informant that Jimmy Ruffin had in his possession a stolen check in a large amount and a social security card in the name of the check's payee and Ruffin was at the corner of 38th Street and Cain (in the City of Baton Rouge) trying to get someone to go with him to cash the check. The police officers proceeded immediately to 38th and Cain and observed Ruffin and two others get into a car and drive off. The officers followed the car for several blocks and then stopped it. A search of Ruffin resulted in the seizure of a United States Treasury check for $898.18 made payable to Charles Tademy, III, and a social security card in Tademy's name.
The Louisiana Supreme Court in Ruffin found there was insufficient corroboration of the informant's information and no probable cause to arrest with the following rationale:

*615 We cannot agree with the state's contention that the information supplied by the confidential informant, when viewed under the totality of the circumstances, established probable cause for the warrantless arrest of the defendant. Although the confidential informant was considered to be reliable by Detective Denicola, as evidenced by the informant's prior record of supplying credible information leading to over fifty arrests resulting in thirty to forty convictions, unless the reliability of the informant alone is sufficient in itself to form probable cause, there is little else upon which the officers could rely to reasonably believe that the defendant was engaged in any unlawful activity.
While an informant's past record for accuracy and reliability is one factor to take into account in determining the reliability of the tip in question, Illinois v. Gates, 462 U.S. at 232, 103 S.Ct. at 2329, this alone will not always support a finding of probable cause. Corroboration of details of an informant's tip by independent police investigation is valuable in applying a totality of the circumstances standard to these type cases. 462 U.S. 241, 103 S.Ct. at 2334. That Ruffin was on the corner of 38th and Cain is the only fact corroborated by the detectives from the information received from the confidential informant. But while standing on the corner where the confidential informant said the defendant would be may be corroborative of the defendant's location, that fact alone does not indicate that the defendant was engaging in any illegal activity such as would furnish probable cause for an arrest. Beck v. Ohio, supra [379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)]; State v. Edwards, supra. It is not even known how the informant knew that Ruffin was on the corner, how he knew the check was stolen, or that Ruffin was trying to get someone to help him cash the check. There is no indication in the informant's statement that the informant had personal knowledge of any of the information provided. In fact, the only probable cause the officers had to believe that the defendant was engaged in any unlawful activity was the word of a reliable confidential informant not otherwise corroborated except as stated hereinabove. Without further corroboration, we find no probable cause for the arrest when examining this tip under the totality of the circumstances. Illinois v. Gates, supra.

[Underscoring added, footnote omitted].

Ruffin, 448 So.2d at 1278-1279.
In Raheem, police officers received information from a reliable informant that two black females and a black male were selling a large quantity of drugs in a known drug dealing area of Baton Rouge, the suspects were riding in a late model beige Cadillac with Michigan plates and could be found on Tyler Street. The officers proceeded to the area and, as they approached Tyler Street, they saw a beige Cadillac with Michigan plates turn off Tyler onto another street. The officers followed the Cadillac a short distance and then stopped it. The occupants of the vehicle were two black females and a black male. A search of one of the females revealed drugs in her purse. A subsequent search of the vehicle resulted in the seizure of more drugs.
The Louisiana Supreme Court in Raheem found no probable cause for the initial stop and arrest with the following rationale:
In the instant case, the informant's veracity was established by the fact that he had supplied information in the past that had led to many arrests and convictions. However, the informant did not set forth the basis of his knowledge or how he knew that defendants were selling drugs. There is no indication in the informant's tip that the informant had personal knowledge of any of the information provided. Detective Denicola explained that the informant did not tell him how he obtained the information during their phone conversation because he (Denicola) was in a hurry to get back to his car and follow up on the tip. The tip did indicate that defendants would be on Tyler Street in a late model beige Cadillac *616 with Michigan plates, and this was corroborated by the police officers as they arrived in the area. While the corroboration of these details of the tip adds to the informant's veracity, it does not indicate that defendants were engaged in any illegal activity. In fact, from the time that police officers first observed the car until they stopped it, the occupants were not observed doing anything that was suspicious or criminal in nature. When asked, `[w]ould it be correct to say that from the time that you first observed their vehicle until the time you stopped it you observed no criminal activity in connection with that car,' Trooper Thompson answered, `[t]hat's correct.' Consequently, except for their presence in a known drug dealing area and the informant's wholly conclusionary statement that the defendants were selling drugs, no articulated facts connected defendants with unlawful activity. Hence, under the totality of circumstances presented, we conclude that there was no probable cause for the defendants' arrests. See State v. Ruffin, 448 So.2d 1274 (La.1984). Accordingly, since defendants were illegally arrested, the evidence seized from Ms. Raheem's purse was unconstitutionally obtained and should have been suppressed.
[Underscoring added, footnote omitted].

Raheem, 464 So.2d at 296-297.
The instant case is more factually similar to Draper and Gates than to Ruffin and Raheem. In the instant case, as in Draper and Gates, the informant predicted future acts of the suspect and those acts occurred and were corroborated by police surveillance. In the instant case, the informant predicted the suspect would leave her home, go to her mother's home and pick up drugs, leave her mother's home and get on the Interstate in her vehicle to deliver the drugs in South Baton Rouge and would exit the Interstate on the Washington Street exit. All of these predicted actions occurred and were corroborated, except for the ultimate fact of possession of the drugs and the delivery of the drugs.[3] As indicated in Draper and Gates, when the future actions of a suspect are accurately predicted by a CI and corroborated by the police, there is a reasonable basis to believe the CI's unverified allegation of drug possession is also true. The accurate prediction of Shepherd's travel plans herein indicates a "fair probability" that the CI's basis of knowledge was either Shepherd herself or someone she trusted. As indicated in Draper and Gates, the corroboration of the "innocent" behavior provides probable cause to believe the allegation of drug possession in the informant's tip is reliable. The instant case is stronger than Draper and Gates because the reliability of the CI herein is strengthened by a three year period of reliable cooperation with the police. We conclude, after considering the totality of the circumstances, there was probable cause to stop and arrest Shepherd and search her vehicle.[4]

DECREE
For the foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The defendant used the nickname of "Janice". Her married name was Shepherd, but she was divorced.
[2] Washington Avenue and Washington Street are different roadways.
[3] If the police officers observed Shepherd with drugs (and thus corroborated this allegation), they would then have direct evidence of the commission of a crime and would not need the information supplied by the CI to establish probable cause.
[4] In this appeal, the defendant does not contest that there were exigent circumstances for searching the vehicle.

Even if there was no probable cause herein, there certainly would be reasonable suspicion for an investigatory stop pursuant to La.C.Cr.P. art. 215.1. If the testimony of Detective Vincent is accepted, this case is very similar to State v. Commodore, 418 So.2d 1330 (La.1982). See also State v. McGary, 397 So.2d 1305 (La.1981) and State v. Neito, 395 So.2d 733 (La.1981).