SHORTESS, Judge.
Terry Gill Bell (defendant), was charged by bill of information with possession of pentazocine, a violation of LSA-R.S. 40:967 C, and pled not guilty. Subsequently, he filed a Motion to Suppress Physical Evidence and Inculpatory Statements alleging that they were unconstitutionally obtained. After hearing, the motion was denied. Subsequently, defendant changed his plea to guilty, but reserved his right to appeal the denial of the motion. See State v. Crosby, 338 So.2d 584, 586 (La.1976).
Defendant was sentenced to serve three years at hard labor. The sentence was suspended; and defendant was placed on supervised probation under the terms and conditions provided in LSA-C.Cr.P. art. 895 and certain additional special conditions.
Defendant has appealed. His sole assignment of error is the denial of his motion to suppress physical evidence seized pursuant to an arrest made without probable cause. Defendant argues that his arrest was illegal because the information supplied by the confidential informer was not reliable and that there was a total lack of corroboration on the part of the police. He contends therefore that the prosecution failed to meet its burden under the “totality of the circumstances test” required by Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983).
The State’s only witness at the motion to suppress hearing was Dennis R. Kelley, a detective with the Baton Rouge Police Department. He testified that on September 23, 1983, at about 9:45 a.m., he received a telephone call from a reliable confidential informer who had provided him information which in the past led to “maybe” ten arrests and “probably” five convictions; that the informer had never provided him with any wrong information; that the informer told him that Terry Bell, a black male, was standing at the back of the Howards’ house at 39th and Cain Streets selling “sets” (combinations of illegal drugs), and he had observed Bell sell sets to another individual approximately ten minutes prior to his call; that the informer told him that Bell had the sets in his waistband just inside his pants and was wearing a “brown sweater and blue jeans or something like that.”
Kelley contacted Baton Rouge City Police Detective William Denicola who met him between 38th and 39th Streets. They *13 talked briefly and then drove in separate ears to the corner of 39th and Cain Streets.
Kelley and Denicola approached from the south, turned into the rear of the Howards’ house, and jumped out of their vehicles. As Kelley got out of his car, he noticed defendant step away from the corner of the fence behind a fig tree where he was standing. Defendant took a couple of steps and “he kind of like started to turn.” Kelley stepped toward defendant and told him to “hold it right there.” Defendant was “kind of reaching toward the front part of his body and turning.” At this point, Kelley grabbed defendant and reached into the front of defendant’s pants, pulled them outward, looked in, and saw a small piece of plastic containing five blue and five yellow pills.[1] Denicola was covering Kelley and watching some other individuals on the corner. Kelley removed the pills from defendant’s pants and defendant said: “Okay, okay. You got me.” Kelley placed defendant under arrest and orally advised him of his Miranda rights at the scene.
At the metro office, defendant was furnished his constitutional rights in written form. Thereafter, he made another statement at about 10:30 a.m. on the same day, in the presence of Kelley and Denicola. In regard to that statement, Kelley testified: “I don’t know his exact words, but it was very similar to this. He stated that, Kelley, you all got me. You know I’ve been out there. What I can say? There’s nothing I can say about it.”
Also arrested at the scene of the incident was Henry Mosby, Jr. Mosby testified that he had been drinking coffee at the Howards’ house; that he left the house from the rear; that by the time he reached the street, defendant drove up in his car; that as defendant got out of his car and closed the door, Kelley drove up in his car; that Kelley told him and defendant to freeze and then searched them; that Kelley did not search defendant’s pockets but stuck his hand underneath defendant’s belt; and that he did not know whether the detective found anything.
Defendant testified that on the day in question, he left his house to go see his aunt, Ms. Howard; that he was wearing blue jeans and a brown “sweater-like shirt”; that he had just arrived in her backyard and was getting out of his car when Kelley told him to freeze; that Mos-by was at the gate “and they already had two more people out there. So he [Kelley] started searching from the other end, from down there where the other two was”; that Kelley unbuckled defendant’s pants, pulled them down, and reached inside his underwear.
Both Mosby and defendant denied that Denicola was present at the scene of the incident. Defendant denied that he made any statement when he was taken downtown. Mosby also stated that he did not recall defendant making any statements.
In addition to Mosby and defendant’s testimony, the defense submitted into evidence a portion of the preliminary hearing testimony of Denicola. That testimony disclosed that Kelley had been contacted by a confidential informer, who stated that defendant was at 39th and Cain Streets selling narcotics. Denicola and Kelley went to that location, observed defendant wearing a brown pullover sweater and blue jeans. Kelley searched defendant, found five sets of T’s and Blues and eighty dollars in cash. Denicola also testified that Kelley gave defendant his constitutional rights orally; that defendant was taken to the' Metro office and given his constitutional rights in written form; and that thereafter defendant made an inculpatory statement.
The State bears the burden of proving the admissibility of evidence seized during a search without a warrant. LSA-C. Cr.P. art. 703(D). A search conducted without a warrant is per se unreasonable under the Fourth Amendment to the United States Constitution, subject only to a *14 few specifically established and well-delineated exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973); State v. Shepherd, 470 So.2d 608 at 611 (La.App. 1st Cir.1985). One such exception to the rule is that a search may be conducted without a warrant when it is an incident to a lawful arrest. Chimel v. California, 395 U.S. 752, S.Ct. 2034, 2038, 23 L.Ed.2d 685 (1969); State v. Shepherd, 470 So.2d 608, 611.
A peace officer may lawfully arrest a person without a warrant when he has reasonable (probable) cause to believe that the person to be arrested has committed an offense. LSA-C.Cr.P. art. 213. Probable cause to arrest exists when facts and circumstances within the arresting officer’s knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. Although mere suspicion cannot justify an arrest, the officer does not need sufficient proof to convict. State v. Bell, 395 So.2d 805, 807 (La.1981). Probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. Whether probable cause existed at the time of the arrest must be determined without regard to the result of the subsequent search. State v. Buckley, 426 So.2d 103, 107 (La.1983).
Probable cause can be based on knowledge supplied to an officer by another person, even if the identity of the informant is kept confidential. The test used to ascertain the credibility of a confidential informant who provides facts to support probable cause to make a warrantless arrest is the same as that used to determine the credibility of information derived from a confidential informant which is contained in a search warrant. State v. Edwards, 406 So.2d 1331, 1337 (La.1981), cert. denied, 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 467 (1982).
Probable cause to search exists when the facts and circumstances, of which the affiant has personal knowledge or reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched. State v. Huffman, 419 So.2d 458, 459-60 (La.1982); State v. Shepherd, 470 So.2d at 612.
To determine whether the information furnished by a confidential informant provides probable cause for an arrest or a search, a court must utilize a “totality of the circumstances analysis” and consider, among other things, the informant’s veracity, facts relating to the informant’s basis of knowledge and corroboration of the informant’s information. Illinois v. Gates, 103 S.Ct. at 2327-8, 2334, State v. Raheem, 464 So.2d 293, 296 (La.1985).
Contrary to defendant’s assertions, the record herein clearly establishes the reliability of the confidential informer, particularly through Kelley’s testimony, who stated that the informer had provided him information in the past leading to “maybe” ten arrests and “probably” five convictions and that the informer had never provided him any wrong information. The informer told Kelley that defendant had been selling sets, that defendant was standing in the rear of the Howards’ house, and that he had observed defendant making such a sale ten minutes prior to his calling the detective. He described the clothing defendant was wearing and told Kelley that the sets were inside defendant’s waistband. Within minutes, Kelley and Denicola arrived at the rear of the Howards’ house, where they found defendant wearing clothes matching those described by the informer. The information furnished by the confidential informer was not only reliable but under the “totality of the circumstances analysis” it clearly provided probable cause for defendant’s arrest thereby rendering the search of his person lawful as incident to the arrest.
*15 Defendant’s sole assignment of error lacks merit. Accordingly, his conviction and sentence are affirmed.
AFFIRMED.

. The pills were later analyzed. The yellow pills were Talwin (pentozocine). The blue ones were pyrobenzomine. These pills are known on the street as “T’s and Blues” and are sold together as "sets.”