597 So.2d 28 (1992)
STATE of Louisiana
v.
Gordon FRANCISE.
No. KA 90 2081.
Court of Appeal of Louisiana, First Circuit.
March 6, 1992.
Rehearing Denied May 6, 1992.
*29 Danah K. Larpenteur, Plaquemine, for the State.
*30 R. Neal Wilkinson, Baton Rouge, for defendant.
Before COVINGTON, C.J., and LeBLANC and WHIPPLE, JJ.
LeBLANC, Judge.
Defendant, Gordon Francise, was charged by bill of information with possession of cocaine, a violation of La.R.S. 40:967C. He pled not guilty and filed a motion to suppress physical evidence and statements made to the police. After the trial court denied this motion, defendant withdrew his plea of not guilty, pled guilty as charged, and reserved the right to appellate review of the district court's denial of his motion to suppress. See State v. Crosby, 338 So.2d 584 (La.1976). He received a sentence of imprisonment at hard labor for five years; however, this sentence was suspended and defendant was placed on supervised probation for five years, subject to various conditions.[1] Defendant now appeals, urging in a single assignment of error that the district court erred in denying the motion to suppress.

FACTS[2]
At approximately 9:30 a.m. on July 27, 1989, Chief Criminal Deputy Ralph Stassi, Jr., of the Iberville Parish Sheriff's Office (IPSO), received a call from a confidential informant (CI) who had given him information in the past which had led in several cases to arrests and convictions. The CI told Chief Stassi that Charles Butler, a known convicted cocaine dealer, was coming to White Castle from Baton Rouge to sell cocaine to Gordon Francise at about 4:30 to 5:00 p.m. that day. The CI stated that Francise was being paid by his employer that day and that Butler, who would have a large quantity of cocaine in his possession, would meet Francise at the Diner on LA 1 in White Castle, where the drug purchase would occur. Although the *31 information the CI provided to Chief Stassi on July 27 indicated that Butler would be carrying a "large quantity" of drugs, the CI did not otherwise specify the amount of drugs Butler would have with him. However, the information Chief Stassi had received from the CI on numerous other occasions was that Butler usually came to White Castle with between approximately one-half and one ounce of drugs.
After receiving this call, Chief Stassi drove to White Castle to meet with White Castle Chief of Police, Blue Guercio, regarding an unrelated matter. While there, he informed Chief Guercio about the information he received from the CI. During the afternoon, after officers had established surveillance, Chief Stassi received a call from one of the officers who was watching the home of Butler's mother. This officer informed Chief Stassi that Butler had arrived in White Castle and was sitting on the porch of his mother's house.
Chief Stassi was informed shortly thereafter by White Castle officers that Butler was walking down LA 1 from his mother's house toward the Diner. At about 5:30 p.m., Chief Stassi himself first observed Butler. After Butler arrived at the Diner, he stood in front of it, apparently waiting for someone. Defendant failed to appear. After waiting awhile, Butler started walking back toward his mother's house.
When it appeared that defendant was not going to meet Butler, Chief Stassi decided to go ahead and arrest Butler at that point. However, before Butler could be stopped, defendant was seen driving into town, and it was decided to observe what defendant would do before stopping Butler. Shortly thereafter, defendant stopped his pickup truck on LA 1 and Butler got into the vehicle. Defendant then turned down Bowie Street, proceeding toward the river. Chief Stassi, accompanied by Chief Guercio, immediately began following defendant's vehicle in an unmarked sheriff's vehicle. Detectives Marionneaux and Engolio proceeded behind Chief Stassi's truck in Marionneaux's vehicle. When defendant turned left onto River Road, Chiefs Stassi and Guercio decided to stop defendant's vehicle, whereupon Chief Stassi activated the grill lights, headlights and siren of his police vehicle. According to Chief Stassi, defendant then looked in his rear view mirror, "saw it was me," sped up, and continued on River Road to the next cross street leading back to LA 1. As defendant proceeded to turn left at the cross street, Chief Stassi tried to position his vehicle along the side of defendant's vehicle to force defendant to stop. Meanwhile, Detectives Marionneaux and Engolio, who were following Chief Stassi, were watching defendant's vehicle closely to see if anything might be thrown from the vehicle, since Marionneaux testified it was common practice for narcotics dealers and users to throw the drugs out during a stop. While defendant was making his turn onto the cross street, Marionneaux and Engolio saw a brown paper bag come out of defendant's vehicle from the passenger side of the vehicle and fall to the ground near the ditch and the roadway. The officers continued their pursuit until defendant stopped his vehicle about two hundred feet down the cross street.
After defendant stopped, the officers converged at the scene with weapons drawn. Chief Stassi explained that it was standard procedure for the officers to draw their weapons for their own protection upon effecting a stop of a convicted drug dealer, such as Butler. Chief Stassi stated he did not see any of the officers' weapons being pointed at defendant or Butler; instead, the guns were being held in a "ready position". In compliance with the orders of the police, defendant and Butler exited defendant's vehicle and placed their hands on the vehicle. Both subjects were advised of their constitutional rights and patted-down for weapons.
When defendant and Butler exited defendant's vehicle, they left the truck's doors open. Chief Stassi observed, through one of the open doors, that there was a roll of money sticking out of the ashtray inside the vehicle. He seized the money, which was in plain view, and consisted of three $20.00 bills.
*32 In the meantime, Guercio and Officer Landry walked from the scene of the stop down the street to recover the bag thrown from defendant's vehicle. During that time, Engolio asked defendant for his consent to a search of his vehicle for narcotics and presented defendant with a consent to search form. After Engolio went over the form with defendant, defendant signed it, giving the officers permission to search the vehicle. Chief Stassi testified that no promises had been made to defendant, and that no threats or pressures had been used in obtaining this consent. Further, Engolio testified that he did not force defendant to consent to the search and that, at the time defendant consented to the search, neither his gun nor that of any other officer was drawn on defendant. Similarly, Chief Stassi emphatically denied that the officers pointed guns at defendant and told him that he had to sign the consent to search form.
Engolio testified that five to seven minutes might have elapsed between the initial stop and the consent to search. However, the search did not begin until after defendant had given his consent to the search. After the search had begun, Guercio and Landry returned on foot to the scene of the stop with a bag, stating that they had found some drugs.[3] During the search of defendant's pickup truck, the officers found and seized used and new syringes, one bag of cocaine, and a corner of a bag, which was shown by subsequent lab tests to contain cocaine.
Butler and defendant were both arrested and transported to the Iberville Parish Jail. While enroute to jail, defendant gave Marionneaux and Engolio an oral statement. Additionally, at the parish jail, after again being advised of his Miranda rights, defendant gave Engolio a written statement.[4]

ASSIGNMENT OF ERROR
In his sole assignment of error, alleging that the trial court erroneously denied his motion to suppress, defendant asserts that the state failed to establish the reliability of the CI and the CI's basis of knowledge. Defendant essentially submits that, because of this failure and the absence of independent police investigation corroborating the allegations in the CI's tip, there was no probable cause to stop and arrest him. Defendant argues that, because there was no probable cause, the stop and arrest were illegal; and, as a result, his consent to the search of his vehicle and all the evidence "gleaned from the stop" are tainted and should be suppressed.
The state bears the burden of proving the admissibility of evidence seized during a search without a warrant. La. C.Cr.P. art. 703D. A search conducted without a warrant is per se unreasonable under the Fourth Amendment to the United States Constitution, subject only to a few specifically established and well-delineated exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). One of these is the "automobile" exception which is based upon the existence of probable cause to search the vehicle and exigent circumstances which render it impractical to secure a warrant. United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). A second exception is that a search may be conducted without a warrant when it is made incident to a lawful arrest. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). When the occupant *33 of an automobile is arrested, the police, as a contemporaneous incident of that arrest, may search the passenger compartment of the automobile. New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); State v. Porterfield, 524 So.2d 1363, 1366 (La.App. 1st Cir.), vacated on rehearing on other grounds, 541 So.2d 909 (La.App. 1st Cir.1988). A third exception (to the requirements of both a warrant and probable cause) is a search conducted pursuant to consent. When the state seeks to rely upon consent to justify the lawfulness of a search, it has the burden of proving the consent was given freely and voluntarily. State v. Pautard, 485 So.2d 909, 912 (La.1986). Because consent is a question of fact involving credibility of the witnesses, the determination of the trial judge, who had an opportunity to observe and hear the witnesses, is given great weight on review. State v. Murley, 514 So.2d 1189, 1191 (La.App. 1st Cir.1987), writ denied, 520 So.2d 424 (La.1988).
An arrest is defined in La.C.Cr.P. art. 201 as follows:
Arrest is the taking of one person into custody by another. To constitute arrest there must be an actual restraint of the person. The restraint may be imposed by force or may result from the submission of the person arrested to the custody of the one arresting him.
An arrest occurs when circumstances indicate an intent to effect an extended restraint on the liberty of an accused, rather than at the precise time an officer tells an accused he is under arrest. State v. Commodore, 418 So.2d 1330, 1333 (La.1982); State v. Wichers, 392 So.2d 419, 423 (La. 1980).
A peace officer may lawfully arrest a person without a warrant when he has reasonable cause to believe that the person to be arrested has committed an offense. La.C.Cr.P. art. 213. Probable cause to arrest exists when facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. Although mere suspicion cannot justify an arrest, the officer does not need sufficient proof to convict. State v. Bell, 395 So.2d 805, 807 (La.1981). Probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. Whether probable cause existed at the time of the arrest must be determined without regard to the result of the subsequent search. State v. Buckley, 426 So.2d 103, 107 (La.1983).
In the instant case, Chief Stassi's activation of the lights and siren on his vehicle, while immediately behind defendant's vehicle, and his pursuit of defendant's vehicle surely was a show of authority, which defendant initially defied by accelerating his vehicle rather than stopping. Until defendant eventually submitted to the officer's show of authority by stopping his vehicle, there was no seizure of defendant or Butler. Thus, the bag containing drugs, which was thrown from defendant's vehicle before defendant stopped, was not the fruit of a seizure and was not subject to suppression under the Fourth Amendment. See California v. Hodari D., ___ U.S. ___, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). When the officers successfully stopped defendant's vehicle, drew their weapons, ordered defendant and Butler out of the vehicle and had them place their hands on the vehicle, an arrest occurred. See, State v. Raheem, 464 So.2d 293, 296 (La.1985). Additionally, notwithstanding defendant's assertions to the contrary, the facts and circumstances of what transpired after the show of authority and prior to defendant's submission thereto are relevant and to be considered, with all other relevant information within the officers' knowledge, in determining whether there was probable cause to stop and arrest defendant.
In the instant case, the information on which the police relied to establish probable cause came from a confidential informant. The test for ascertaining the credibility of a confidential informant who provides *34 information which supports probable cause for a warrantless arrest is the same as the test used to determine the credibility of information received from a confidential informant which is contained in a search warrant. State v. Edwards, 406 So.2d 1331, 1337 (La.1981), cert. denied, 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 467 (1982). Prior to Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), courts mechanically followed the "two-pronged" test of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), to determine whether information from a confidential informant established probable cause. Under this test, it was necessary to show facts relating to the informant's "basis of knowledge" and his "veracity" or "reliability." However, in Gates, the United States Supreme Court abandoned an inflexible application of this test in favor of a totality of the circumstances analysis. The Court held that, while "basis of knowledge" and "reliability" are relevant considerations, these factors are not absolutely controlling and "a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." 103 S.Ct. at 2329.
Defendant argues that the facts in the instant case are analogous to those in State v. Raheem. However, we find the facts of the instant case to be clearly distinguishable from those in Raheem, a case involving a warrantless arrest based on information received from a confidential informant who failed to disclose the basis of his knowledge. In Raheem, our Supreme Court found there was no probable cause justifying the warrantless arrest. However, unlike Raheem (in which there was insufficient corroboration of the informant's tip to establish probable cause), in the instant case, the independent corroboration of the informant's tip by the police was sufficient under the totality of the circumstances to establish probable cause that defendant was in possession of illegal drugs. Thus, rather than being factually similar to Raheem, the instant case is more factually similar to Illinois v. Gates and State v. Shepherd, 470 So.2d 608 (La.App. 1st Cir.1985).
In Gates, the police received an anonymous letter stating that the defendants were involved in drug trafficking. The letter predicted in specific detail certain future conduct, innocent in itself, which would be undertaken by defendants. These predictions were corroborated by police surveillance. A search warrant was thereupon issued on the basis of the anonymous letter and the corroboration of the details it contained. The Supreme Court held that these facts were sufficient to establish probable cause under the totality of the circumstances.
In Shepherd, a confidential informant gave police a tip that defendant would be in possession of illegal drugs at a specified time. The informant, who had given reliable information in the past, did not state the basis of his knowledge of this fact. However, he did predict certain future acts by the defendant, the occurrence of which were corroborated by the police. Although these acts were not illegal in themselves, this court held that the corroboration of these "innocent" acts provided probable cause to believe the informant's allegation of drug possession.
In the instant case, although the CI's basis of information was not disclosed, his veracity was well-established by the fact that he had provided information to the police in the past which had led to arrests and convictions. The informant predicted that Butler, a known convicted cocaine dealer, would come to White Castle on the evening of July 27, 1989, to sell cocaine to defendant. The tipster further predicted that Butler and defendant would meet at the Diner on LA 1 and conclude the drug transaction there at about 4:30 to 5:00 p.m. The police set up surveillance to await the arrival of defendant and Butler. The officers observed Butler walk down LA 1 to the Diner at about 5:30 p.m. After Butler waited awhile without defendant appearing, he began walking back toward his mother's home. Shortly thereafter, defendant was observed driving into White Castle in his pickup truck. The officers *35 watched defendant stop his vehicle on LA 1 and saw Butler get into defendant's truck. Chief Stassi then followed defendant's vehicle as it turned from LA 1 onto Bowie Street. Chief Stassi, an officer with seventeen years of police experience, observed defendant and Butler (apparently through the glass at the rear of the cab of defendant's pickup truck) from a distance of about twenty-five to thirty feet as he followed defendant's truck. Although Chief Stassi's testimony at the hearing on the motion to suppress (indicating that he had observed defendant and Butler engaging only in a conversation while he was following defendant's vehicle) served to repudiate his earlier testimony at the preliminary examination that he had observed "some handing back and forth," Chief Stassi maintained his testimony that he had observed what he thought was an illegal transaction between defendant and Butler. All of these facts and circumstances are augmented by defendant's act of accelerating his vehicle upon Chief Stassi's show of authority and the fact that detectives Marionneaux and Engolio observed a bag thrown out the passenger side of defendant's vehicle prior to defendant's submission to the show of authority. Aware that illegal drug traffickers commonly attempt to abandon illegal drugs, the officers were watching for just such an occurrence. When, as in this case, the future actions of a suspect are accurately predicted by a confidential informant and corroborated by the police, there is a reasonable basis to believe the informant's unverified allegation of drug possession is also true. The corroboration of the innocent behavior provides probable cause to believe the allegation of drug possession in the informant's tip is reliable.
After considering the totality of the circumstances, we conclude that there was probable cause to stop and arrest defendant[5] and search his vehicle. See e.g., Illinois v. Gates; Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); State v. Porterfield, supra; State v. Shepherd, supra. Because there was probable cause to stop and arrest defendant, the allegation that the physical evidence seized during the search of defendant's vehicle and defendant's oral and written statements to the police were tainted by an illegal stop and arrest without probable cause necessarily falls. As previously stated herein, the bag and its contents that were abandoned shortly before the stop were not fruits of a seizure. Although the search of defendant's vehicle was lawful under the automobile exception, the search was also lawfully conducted pursuant to defendant's consent, which the record reflects was given freely and voluntarily. Furthermore, the money inside the ashtray was lawfully seized under the plain view doctrine.[6] Accordingly, the trial court correctly denied the motion to suppress.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The record reflects that Judge Jack T. Marionneaux presided at the hearing on the motion to suppress and denied the motion; Judge Catherine D. Kimball accepted defendant's guilty plea and imposed defendant's sentence.
[2] In brief, both defendant and the state rely on facts established by testimony at defendant's preliminary examination to furnish facts and circumstances not introduced into evidence at the suppression hearing. The transcript of the testimony given at the preliminary examination was not introduced in evidence. See, La.C.Cr.P. art. 295, which sets forth situations in which such a transcript may be admitted in evidence at a subsequent judicial proceeding.

It is a well-established jurisprudential rule that, in determining whether the ruling on a motion to suppress is correct, an appellate court is not limited to the evidence adduced at the hearing on the motion, but may consider all pertinent evidence given at the trial of the case. State v. Beals, 410 So.2d 745, 747 (La.1982), and the cases cited therein. However, we are unaware of any published Louisiana jurisprudence clearly addressing the issue of whether an appellate court may consider testimony elicited at a preliminary examination, but not admitted at a subsequent suppression hearing or trial, in its review of the correctness of a ruling on a motion to suppress.
In Beals, in reviewing a ruling on a motion to suppress, (without addressing the issue of whether an appellate court can consider pertinent testimony given at a preliminary examination, but not admitted in evidence at a subsequent hearing or trial) our Supreme Court took into consideration the defendant's trial testimony to establish that she was a resident of the premises named in a search warrant. In doing so, the Beals court stated that it had not considered testimony given at the preliminary examination, noting that there had been no effort to introduce the testimony given at the preliminary examination in evidence either at the hearing on the motion to suppress or at trial, and that the circumstances under which La.C.Cr.P. art. 295 authorizes such testimony to be admitted in evidence had not been established. 410 So.2d at 747, n. 1. However, in his concurring opinion in Beals, Justice Lemmon indicated that, in reviewing the lower court's ruling on the motion to suppress, the Supreme Court should have considered testimony given at the earlier preliminary examination establishing the fact of the defendant's residence and that it was therefore not necessary to consider the defendant's own testimony at trial to establish that fact. 410 So.2d at 749. We agree with Justice Lemmon's reasoning.
In our view, neither Beals nor La.C.Cr.P. art. 295 precludes an appellate court's consideration of testimony given at a preliminary examination, but not admitted in evidence at a subsequent suppression hearing or trial, in reviewing the correctness of a ruling on a motion to suppress. Thus, because we conclude that an appellate court may consider such testimony in determining whether a ruling on a motion to suppress is correct, we have considered the testimony given at the preliminary examination and the suppression hearing in the instant case.
[3] Chief Stassi's testimony reflects that the bag contained eighteen smaller bags of cocaine packaged for resale. Additionally, Chief Stassi indicated, in his testimony, that he thought there was also a small amount of marijuana in the bag.
[4] In his written statement, defendant admitted that he had given Butler three $20.00 bills for one-half gram of cocaine priced at fifty dollars. In addition, defendant disclosed in his written statement that Butler shoved the $20.00 bills in the ashtray and threw a bag out of the window of the truck. Defendant also stated that he was purchasing the cocaine for someone else; but, at defendant's request, Engolio did not include this additional information in defendant's written statement.
[5] Clearly, because probable cause (the greater level of suspicion required for an arrest) existed at the time defendant was stopped, reasonable cause (the lesser level of suspicion required for an investigatory stop) also existed.
[6] We note that since Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 2308 and 2310, 110 L.Ed.2d 112 (1990), only two conditions must be satisfied to trigger the applicability of the plain view doctrine: (1) there must be a prior justification for an intrusion into a protected area, and (2) it must be immediately apparent without close inspection that the items are evidence or contraband. Pursuant to Horton v. California, a third condition, that the object seized be inadvertently discovered, is no longer necessary. See, State v. Carey, 568 So.2d 609, 610, n. 1 (La.App. 4th Cir.1990).