813 So.2d 640 (2002)
STATE of Louisiana
v.
Brian Michael LUMPKIN.
No. 2001 KA 1721.
Court of Appeal of Louisiana, First Circuit.
March 28, 2002.
*642 Walter P. Reed, District Attorney, Covington, By Lewis V. Murray, III, Assistant District Attorney, Franklinton, Dorothy Pendergast, Assistant District Attorney, Metairie, for Appellee State of Louisiana.
Jane Beebe, Appellate Attorney, Franklinton, for Defendant/Appellant Brian Michael Lumpkin.
Before: FITZSIMMONS, DOWNING and LANIER,[1] JJ.
LANIER, Judge.
The defendant, Brian Michael Lumpkin, was charged by bill of information with possession with intent to distribute a schedule I controlled dangerous substance (lysergic acid diethylamide), a violation of La. R.S. 40:966(A)(1). He pled not guilty. He moved to suppress the State's use of evidence seized. Following a hearing, the motion was denied. The State amended the charge to possession with intent to distribute a schedule III controlled dangerous substance, a violation of La. R.S. 40:968(A)(1), and Lumpkin pled guilty reserving the right to appeal the court's ruling on the motion to suppress pursuant to State v. Crosby, 338 So.2d 584 (La.1976). He was sentenced to five years at hard labor, suspended, and five years probation subject to certain special conditions. Lumpkin now appeals.

FACTS
On July 19, 1999, at approximately 7:30 p.m., Bogalusa Police Department Officer Mike Edwards was paged by "a source." Officer Edwards indicated the source (hereinafter CI) was a confidential informant, i.e., "someone we use that we don't divulge to other officers." The CI was supplying information for the first time to *643 Officer Edwards. The CI advised Officer Edwards that Brian Lumpkin would be coming into Bogalusa with approximately 100-200 "hits of LSD" at approximately 8:30 or 9:00 p.m. that night. The CI further advised that Lumpkin, a white male, would be coming in from the Bush area on Highway 21 driving a white Pontiac Grand Am. Officer Edwards and other members of his narcotics team set up surveillance on Highway 21. At "maybe a few minutes to ten," a white Pontiac Grand Am was observed coming from Bush and headed toward Bogalusa. It was followed and pulled over. Lumpkin was identified as the vehicle's driver. The police advised him of the information they had received. Lumpkin was handcuffed and taken to the rear of the vehicle. He was not asked for permission to search his vehicle. Five police officers were at the scene. After the police searched the vehicle for approximately five minutes, LSD was discovered in the headliner on the driver's side of the vehicle.

VALIDITY OF SEARCH

(Assignment of error 1)
In his sole assignment of error, Lumpkin contends the trial court erred in denying his motion to suppress. Lumpkin challenged the search as violative of his constitutional rights because the police failed to obtain a search warrant for the search and the search was not conducted pursuit to an exception to the requirement for a search warrant.
The following analysis of the law found in State v. Shepherd, 470 So.2d 608, 611-616 (La.App. 1 Cir.1985) applies in this case:
The State bears the burden of proving the admissibility of evidence seized during a search without a warrant. La. C.Cr.P. art. 703(D). A search conducted without a warrant is per se unreasonable under the fourth amendment, subject only to a few specifically established and well-delineated exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). One of these is the "automobile" exception which is based upon the existence of probable cause to search the vehicle and exigent circumstances which render it impractical to secure a warrant. United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). A second exception to the rule is that a search may be conducted without a warrant when it is an incident to a lawful arrest. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). When the occupant of an automobile is arrested, the police, as a contemporaneous incident of that arrest, may search the passenger compartment of the automobile. New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); State v. Singletary, 442 So.2d 707 (La.App. 1 Cir.1983).
An arrest is defined in La.C.Cr.P. art. 201 as follows:
Arrest is the taking of one person into custody by another. To constitute arrest there must be an actual restraint of the person. The restraint may be imposed by force or may result from the submission of the person arrested to the custody of the one arresting him.
An arrest occurs when circumstances indicate an intent to effect an extended restraint on the liberty of an accused, rather than at the precise time an officer tells an accused he is under arrest. State v. Commodore, 418 So.2d 1330 (La. *644 1982); State v. Wichers, 392 So.2d 419 (La.1980).
A peace officer may lawfully arrest a person without a warrant when he has reasonable (probable) cause to believe that the person to be arrested has committed an offense. La.C.Cr.P. art. 213. Probable cause to arrest exists when facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. Although mere suspicion cannot justify an arrest, the officer does not need sufficient proof to convict. State v. Bell, 395 So.2d 805 (La.1981). Probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. Whether probable cause existed at the time of the arrest must be determined without regard to the result of the subsequent search. State v. Buckley, 426 So.2d 103 (La.1983).
Probable cause can be based on knowledge supplied to an officer by another person, even if the identity of the informant is kept confidential. The test used to ascertain the credibility of a confidential informant who provides facts to support probable cause to make a warrantless arrest is the same as that used to determine the credibility of information derived from a confidential informant which is contained in a search warrant. State v. Edwards, 406 So.2d 1331 (La.1981).
Probable cause to search exists when the facts and circumstances are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched. State v. Huffman, 419 So.2d 458 (La.1982); State v. Williams, 432 So.2d 1003 (La.App. 1 Cir.1983), writ denied, 435 So.2d 439 (La.1983). To determine whether the information furnished by a confidential informant provides probable cause for an arrest or a search, a court must utilize a "totality of the circumstances analysis" and consider, among other things, the informant's veracity, facts relating to the informant's basis of knowledge and corroboration of the informant's information. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); State v. Raheem, 464 So.2d 293 (La.1985).
In Illinois v. Gates, police authorities received an anonymous letter advising the defendants were engaged in selling drugs. The letter also gave some details of a trip to Florida planned by the defendants to obtain drugs and concluded with a statement that the defendants had over $100,000 worth of drugs in the basement of their home in Illinois. Police authorities conducted extensive surveillance of the defendants. The Florida trip predicted by the letter occurred and the surveillance corroborated its details, essentially as predicted by the letter. Based on this, police authorities secured search warrants for the defendants' residence and automobile. A search pursuant to the warrants resulted in the seizure of drugs in both places.
Because the letter was anonymous in Illinois v. Gates, the veracity of the informant was unknown. The contents of the letter did not directly reveal the basis of the informant's knowledge. The police corroborated by surveillance the trip to Florida as predicted in the letter. There was no corroboration of the informant's statements that there were drugs in the Gates' vehicle or residence. In finding there was probable cause for the *645 issuance of the search warrants, the United States Supreme Court observed as follows:
Our decision in Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), however, is the classic case on the value of corroborative efforts of police officials. There, an informant named Hereford reported that Draper would arrive in Denver on a train from Chicago on one of two days, and that he would be carrying a quantity of heroin. The informant also supplied a fairly detailed physical description of Draper, and predicted that he would be wearing a light colored raincoat, brown slacks and black shoes, and would be walking "real fast." Id., at 309, 79 S.Ct. at 331. Hereford gave no indication of the basis for his information.[12]
On one of the stated dates police officers observed a man matching this description exit a train arriving from Chicago; his attire and luggage matched Hereford's report and he was walking rapidly. We explained in Draper that, by this point in his investigation, the arresting officer "had personally verified every facet of the information given him by Hereford except whether petitioner had accomplished his mission and had the three ounces of heroin on his person or in his bag. And surely, with every other bit of Hereford's information being thus personally verified, [the officer] had `reasonable grounds' to believe that the remaining unverified bit of Hereford's informationthat Draper would have the heroin with himwas likewise true," Id., at 313, 79 S.Ct. at 333.

The showing of probable cause in the present case was fully as compelling as that in Draper. Even standing alone, the facts obtained through the independent investigation of Mader and the DEA at least suggested that the Gates were involved in drug trafficking. In addition to being a popular vacation site, Florida is well-known as a source of narcotics and other illegal drugs. See United States v. Mendenhall, 446 U.S. 544, 562, 100 S.Ct. 1870, 1881, 64 L.Ed.2d 497 (1980). (POWELL, J., concurring); DEA, Narcotics Intelligence Estimate, The Supply of Drugs to the U.S. Illicit Market From Foreign and Domestic Sources 10 (1979). Lance Gates' flight to Palm Beach, his brief, overnight stay in a motel, and apparent immediate return north to Chicago in the family car, conveniently awaiting him in West Palm Beach, is as suggestive of a pre-arranged drug run, as it is of an ordinary vacation trip.
In addition, the magistrate could rely on the anonymous letter, which had been corroborated in major part by Mader's effortsjust as had occurred in Draper.[13] The Supreme Court of Illinois *646 reasoned that Draper involved an informant who had given reliable information on previous occasions, while the honesty and reliability of the anonymous informant in this case were unknown to the Bloomingdale police. While this distinction might be an apt one at the time the police department received the anonymous letter, it became far less significant after Mader's independent investigative work occurred. The corroboration of the letter's predictions that the Gates' car would be in Florida, that Lance Gates would fly to Florida in the next day or so, and that he would drive the car north toward Bloomingdale all indicated, albeit not with certainty, that the informant's other assertions also were true. "Because an informant is right about some things, he is more probably right about other facts," Spinelli [v. U.S.], supra, 393 U.S. [410], at 427, 89 S.Ct. [584], at 594 [21 L.Ed.2d 637 (1969) ] (WHITE, J., concurring) including the claim regarding the Gates' illegal activity. This may well not be the type of "reliability" or "veracity" necessary to satisfy some views of the "veracity prong" of Spinelli, but we think it suffices for the practical, common-sense judgment called for in making a probable cause determination. It is enough, for purposes of assessing probable cause, that "corroboration through other sources of information reduced the chances of a reckless or prevaricating tale," thus providing "a substantial basis for crediting the hearsay." Jones v. United States, supra, 362 U.S. [257], at 269, 271, 80 S.Ct. [725], at 735, 736 [4 L.Ed.2d 697 (1960)].
Finally, the anonymous letter contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted. The letter writer's accurate information as to the travel plans of each of the Gates was of a character likely obtained only from the Gates themselves, or from someone familiar with their not entirely ordinary travel plans. If the informant had access to accurate information of this type a magistrate could properly conclude that it was not unlikely that he also had access to reliable information of the Gates' alleged illegal activities.[14] *647 Of course, the Gates' travel plans might have been learned from a talkative neighbor or travel agent; under the "two-pronged test" developed from Spinelli, the character of the details in the anonymous letter might well not permit a sufficiently clear inference regarding the letter writer's "basis of knowledge." But, as discussed previously, supra, 103 S.Ct. at 2332, probable cause does not demand the certainty we associate with formal trials. It is enough that there was a fair probability that the writer of the anonymous letter had obtained his entire story either from the Gates or someone they trusted. And corroboration of major portions of the letter's predictions provides just this probability. It is apparent, therefore, that the judge issuing the warrant had a "substantial basis for ... conclud[ing]" that probable cause to search the Gates' home and car existed. [Underscoring added]. Illinois v. Gates, 103 S.Ct. at 2334-2336.
In Ruffin, the police received information from an extremely reliable confidential informant that Jimmy Ruffin had in his possession a stolen check in a large amount and a social security card in the name of the check's payee and Ruffin was at the corner of 38th Street and Cain (in the City of Baton Rouge) trying to get someone to go with him to cash the check. The police officers proceeded immediately to 38th and Cain and observed Ruffin and two others get into a car and drive off. The officers followed the car for several blocks and then stopped it. A search of Ruffin resulted in the seizure of a United State Treasury check for $898.18 made payable to Charles Tademy, III, and a social security card in Tademy's name.
The Louisiana Supreme Court in Ruffin found there was insufficient corroboration of the informant's information and no probable cause to arrest with the following rationale:
We cannot agree with the state's contention that the information supplied by the confidential informant, when viewed under the totality of the circumstances, established probable cause for the warrantless arrest of the defendant. Although the confidential informant was considered to be reliable by Detective Denicola, as evidenced by the informant's prior record of supplying credible information leading to over fifty arrests resulting in thirty to forty convictions, unless the reliability of the informant alone is sufficient in itself to form probable cause, there is little else upon which the officers could rely to reasonably believe that the defendant was engaged in any unlawful activity.
While an informant's past record for accuracy and reliability is one factor to take into account in determining the reliability of the tip in question, Illinois v. Gates, 462 U.S. at 232, 103 S.Ct. at 2329, this alone will not always support a finding of probable cause. Corroboration of details of an informant's tip by independent police investigation is valuable in applying a totality of the circumstances standard to these type cases. 462 U.S. at 241, 103 S.Ct. at 2334. That Ruffin was on the corner of 38th and Cain is the only fact corroborated by the detectives from the information received from the confidential informant. But while standing on the corner where the confidential informant said the defendant would be may be corroborative of the defendant's location, that fact alone does not indicate *648 that the defendant was engaging in any illegal activity such as would furnish probable cause for an arrest. Beck v. Ohio, supra [379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)]; State v. Edwards, supra. It is not even known how the informant knew that Ruffin was on the corner, how he knew the check was stolen, or that Ruffin was trying to get someone to help him cash the check. There is no indication in the informant's statement that the informant had personal knowledge of any of the information provided. In fact, the only probable cause the officers had to believe that the defendant was engaged in any unlawful activity was the word of a reliable confidential informant not otherwise corroborated except as stated hereinabove. Without further corroboration, we find no probable cause for the arrest when examining this tip under the totality of the circumstances. Illinois v. Gates, supra. [Underscoring added, footnote omitted]. Ruffin, 448 So.2d at 1278-1279.
In Raheem, police officers received information from a reliable informant that two black females and a black male were selling a large quantity of drugs in a known drug dealing area of Baton Rouge, the suspects were riding in a late model beige Cadillac with Michigan plates and could be found on Tyler Street. The officers proceeded to the area and, as they approached Tyler Street, they saw a beige Cadillac with Michigan plates turn off Tyler onto another street. The officers followed the Cadillac a short distance and then stopped it. The occupants of the vehicle were two black females and a black male. A search of one of the females revealed drugs in her purse. A subsequent search of the vehicle resulted in the seizure of more drugs.
The Louisiana Supreme Court in Raheem found no probable cause for the initial stop and arrest with the following rationale:
In the instant case, the informant's veracity was established by the fact that he had supplied information in the past that had led to many arrests and convictions. However, the informant did not set forth the basis of his knowledge or how he knew that defendants were selling drugs. There is no indication in the informant's tip that the informant had personal knowledge of any of the information provided. Detective Denicola explained that the informant did not tell him how he obtained the information during their phone conversation because he (Denicola) was in a hurry to get back to his car and follow up on the tip. The tip did indicate that defendants would be on Tyler Street in a late model beige Cadillac with Michigan plates, and this was corroborated by the police officers as they arrived in the area. While the corroboration of these details of the tip adds to the informant's veracity, it does not indicate that defendants were engaged in any illegal activity. In fact, from the time that police officers first observed the car until they stopped it, the occupants were not observed doing anything that was suspicious or criminal in nature. When asked, "[w]ould it be correct to say that from the time that you first observed their vehicle until the time you stopped it you observed no criminal activity in connection with that car," Trooper Thompson answered, "[t]hat's correct." Consequently, except for their presence in a known drug dealing area and the informant's wholly conclusionary statement that the defendants were selling *649 drugs, no articulated facts connected defendants with unlawful activity. Hence, under the totality of circumstances presented, we conclude that there was no probable cause for the defendants' arrests. See State v. Ruffin, 448 So.2d 1274 (La.1984). Accordingly, since defendants were illegally arrested, the evidence seized from Ms. Raheem's purse was unconstitutionally obtained and should have been suppressed. [Underscoring added, footnote omitted]. Raheem, 464 So.2d at 296-297.
The question in this case is whether the future conduct of Lumpkin predicted by the CI was in sufficient detail that, when verified, the police officers had probable cause to believe that illegal activity was taking place and that Lumpkin should be arrested and/or his vehicle searched. This case factually lies in the gap between the facts of Ruffin-Raheem and Draper-Gates-Shepherd.
This case is more analogous to Draper and Shepherd than Ruffin and Raheem. This CI correctly described Lumpkin and predicted his future conduct as follows:
(1) a white male
(2) named Brian Lumpkin
(3) driving a white Pontiac Grand Am
(4) coming from Bush, La.
(5) going to Bogalusa, La.
(6) traveling on La. Hwy. 21
(7) on July 19, 1999
(8) at about 8:30-9:00 p.m.actually 10:00 p.m.
This is more detail than Shepherd, but less detail than Draper. In this case, the CI was known, but this was his or her first report. In Draper and Shepherd the CIs had prior track records for veracity. However, in Gates, the tip was anonymous.
Under the totality of the circumstances, the information given by the CI, as corroborated, justified an investigative stop. La. C.Cr.P. art. 215.1; Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). When the officers confirmed the identity of Lumpkin, pursuant to Draper and Shepherd, they had probable cause to arrest him and search the vehicle. The trial court ruling was correct.
This assignment of error is without merit.

DECREE
For the foregoing reasons, the ruling of the trial court on the motion to suppress, the conviction and the sentence are affirmed.
AFFIRMED.
DOWNING, J., dissents and assigns reasons.
DOWNING, J., dissenting.
I respectfully dissent. The majority here finds reasonable suspicion for police officers to stop Mr. Lumpkin based on information not known to them until after the stop. "The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search." (Emphasis added.) Florida v. J.L., 529 U.S. 266, 271, 120 S.Ct. 1375, 1379, 146 L.Ed.2d 254 (2000).
Here, police officers had no independent knowledge of criminal activity when it stopped Mr. Lumpkin. They had a tip from an informant without any proven reliability. What the police knew from their own corroboration was that a white male `as driving a white Pontiac Grand Am into Bogalusa, "maybe" an hour after the half-hour time window provided in the tip.[1] *650 The police did not know where specifically the Pontiac Grand Am was coming from. They did not know Mr. Lumpkin was driving the automobile until after they stopped him. The police officers knew that the tip was inaccurate regarding the time a white Pontiac Grand Am was to pass by.
In Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), the Supreme Court found the following anonymous tip, with corroboration, "borderline" for reasonable suspicion to conduct a Terry[2] stop: "... Vanessa White would be leaving 235-C Lynwood Terrace Apartments at a particular time in a brown Plymouth station wagon with the right taillight lens broken, that she would be going to Dobey's motel, and that she would be in possession of about an ounce of cocaine inside a brown attaché case." White, 496 U.S. at 327, 110 S.Ct. at 2414. In White, the police officers corroborated that the defendant's departure from the predicted building in the described automobile was within the timeframe predicted and that the defendant took the most direct route possible to the destination motel over four miles, making several turns.
In White the Supreme Court reasoned: "We think it also important that, as in Gates,[3] `the anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted.'" White, 496 U.S. at 332, 110 S.Ct. at 2417. Here, almost anyone could predict that a white Pontiac Grand Am would approach Bogalusa on a state highway almost any day. In White the Supreme Court stated that a tip predicting future behavior can be reliable when it demonstrates "inside informationa special familiarity with respondent's affairs." Id. The record before us contains no facts showing the informant had any inside information or special familiarity with Mr. Lumpkin's affairs. Many people would know if Mr. Lumpkin made the trip between Bush and Bogalusa daily. Few would probably know if the trips were infrequent. The informant's tip that Mr. Lumpkin would be on the highway does not indicate in any way that the informant knew Mr. Lumpkin would be carrying hidden contraband or otherwise had any special familiarity with Mr. Lumpkin's activities, criminal or otherwise.
In the recent United States Supreme Court case, Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), an anonymous tip reported to the police that a young black male was standing at a particular bus stop and wearing a plaid shirt and was carrying a gun. The Supreme Court ruled that this information was insufficient to establish a reasonable basis to suspect criminal activity. The Supreme Court stated in the context of whether reasonable suspicion existed to justify a Terry stop that, "Knowledge about a person's future movements indicates some familiarity with that person's affairs, but having such knowledge does not necessarily imply that the informant knows, in particular, whether that person *651 is carrying hidden contraband." J.L., 529 U.S. at 271, 120 S.Ct. at 1379.
In J.L., 529 U.S. at 272, 120 S.Ct. at 1379, the Supreme Court explained the following:
The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.
The tip before us contains a smaller range of corroborated details predicting Mr. Lumpkin's future actions than the Supreme Court had before it in White, which the Supreme Court designated "borderline" for exhibiting sufficient indicia of reliability for reasonable suspicion. White, 496 U.S. at 327, 110 S.Ct. at 2414. The tip in White predicted departure from a specific apartment and arrival at a particular motel. The tip here predicts travel between two cities on a state highway within a half-hour window between 8:30 p.m. and 9:00 p.m. The only facts before us that police officers could corroborate were that a white male was driving a white Pontiac Grand Am on the state highway approaching Bogalusa on July 19, 1999 at a time maybe an hour later than predicted.
The tip before us lacks the moderate indicia of reliability present in White, the Supreme Court's borderline for concluding that reasonable suspicion exists to conduct a Terry stop. That the allegations in the tip turned out to be true does not suggest that the officers had reasonable suspicion for suspecting Mr. Lumpkin of engaging in criminal conduct. J.L., 529 U.S. at 271, 120 S.Ct. at 1379. Therefore, I conclude that the search of Lumpkin's vehicle was not lawfully conducted pursuant to the automobile exception to the Fourth Amendment's requirement for a search warrant. Nor can I find any other exception that applies.
Assuming, however, that reasonable suspicion to stop Mr. Lumpkin did exist, I can still find no probable cause to permit the police officers to search his automobile. The majority suggests that the verification of Mr. Lumpkin's name somehow wafts reasonable suspicion into probable cause.
Probable cause means "a fair probability that contraband or evidence of a crime will be found." See Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). A confidential informant may provide adequate information to establish probable cause for a warrantless arrest where the basis for the informant's knowledge and the informant's reliability, when examined under the totality of the circumstances, are established. State v. Fisher, 97-1133, p. 8 (La.9/9/98), 720 So.2d 1179, 1184. In order to establish probable cause, the State is "required to produce some evidence of the unnamed informants' reliability and basis of knowledge." Fisher, 97-1133 at p. 9, 720 So.2d at 1184.
Here, the only evidence of the informant's credibility is that he accurately predicted that a white Grand Am driven by a white male would come down Highway 21 on July 19, 1999, but which approached Bogalusa "maybe" an hour after the half-hour window predicted by the CI. The record contains no evidence of the circumstances, sources or bases of knowledge by which the information was obtained to indicate its veracity. Further, the State produced no evidence of the unnamed informant's reliability. Officer Edwards testified that the CI was supplying evidence for the first time. Therefore, the CI has no record for accuracy from which a court could infer reliability. No other evidence was introduced of any history or facts to show that the CI was reliable.
Nonetheless, even an anonymous tip may provide probable cause for an arrest, or reasonable suspicion for an investigatory stop, if it accurately predicts future *652 conduct in sufficient detail to support a reasonable belief that the informant had reliable information regarding the suspect's illegal activity. State v. Smith, XXXX-XXXX, p. 1 (La.5/25/01), 785 So.2d 815, 816.
However, as discussed above, the tip before us has minimal detail showing the confidential informant had any inside information or special familiarity with Mr. Lumpkin's affairs, criminal or otherwise. Possibly anyone who knew Mr. Lumpkin could have predicted his presence on La. Highway 21 on the night in question. Further, as discussed above, ability to identify Mr. Lumpkin and broadly predict his activities does not indicate any special knowledge that Mr. Lumpkin would engage in criminal activity. There is no evidence that Mr. Lumpkin was traveling to or from any known high crime area as in Gates or that his actions were in any way suspicious. A minimally corroborated tip of fairly general information by an informant of unproven reliability cannot give rise to the level of probable cause so as to justify a warrantless search of Mr. Lumpkin's automobile.
Here, under the totality of circumstances, I conclude that the tip, as corroborated, fails to exhibit sufficient indicia or reliability to justify an investigatory stop or to justify a search under any exception to the Fourteenth Amendment's requirement that searches be conducted pursuant to a warrant. Therefore, I respectfully dissent.
NOTES
[1] The Hon. Walter I. Lanier, Jr., Judge (retired), First Circuit Court of Appeal, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[12] The tip in Draper might well not have survived the rigid application of the "two-pronged test" that developed following Spinelli. The only reference to Hereford's reliability was that he had "been engaged as a `special employee' of the Bureau of Narcotics at Denver for about six months, and from time to time gave information to [the police] for small sums of money, and that [the officer] had always found the information given by Hereford to be accurate and reliable." 358 U.S. at 309, 79 S.Ct. at 331. Likewise, the tip gave no indication of how Hereford came by his information. At most, the detailed and accurate predictions in the tip indicated that, however Hereford obtained his information, it was reliable.
[13] The Illinois Supreme Court thought that the verification of details contained in the anonymous letter in this case amounted only to "the corroboration of innocent activity." J.A. 12a, and that this was insufficient to support a finding of probable cause. We are inclined to agree, however, with the observation of Justice Moran in his dissenting opinion that "In this case, just as in Draper, seemingly innocent activity became suspicious in the light of the initial tip." J.A. 18a. And it bears noting that all of the corroborating detail established in Draper, supra, was of entirely innocent activity a fact later pointed out by the Court in both Jones v. United States, 362 U.S. 257, 269-270, 80 S.Ct. 725, 735-736, 4 L.Ed.2d 697 (1960), and Ker v. California, 374 U.S. 23, 36, 83 S.Ct. 1623, 1631, 10 L.Ed.2d 726 (1963). This is perfectly reasonable. As discussed previously, probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to sub silentio impose a drastically more rigorous definition of probable cause than the security of our citizens demands. We think the Illinois court attempted a too rigid classification of the types of conduct that may be relied upon in seeking to demonstrate probable cause. See Brown v. Texas, 443 U.S. 47, 52, n. 2, 99 S.Ct. 2637, 2641, n. 2, 61 L.Ed.2d 357 (1979). In making a determination of probable cause the relevant inquiry is not whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of non-criminal acts.
[14] ... The magistrate's determination that there might be drugs or evidence of criminal activity in the Gates' home was well-supported by the less speculative theory, noted in text, that if the informant could predict with considerable accuracy the somewhat unusual travel plans of the Gates, he probably also had a reliable basis for his statements that the Gates kept a large quantity of drugs in their home and frequently were visited by other drug traffickers there.
[1] Officer Edwards testified that Officer Phelps first spotted the white Grand Am "[a]round nine o'clock, I'm not exactly sure of the time, maybe a few minutes to ten."
[2] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968): "When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." Terry, 392 U.S. at 24, 88 S.Ct. at 1881.
[3] Illinois v. Gates, 462 U.S. 213, 245, 103 S.Ct. 2317, 2335-2336, 76 L.Ed.2d 527 (1983).