STATE OF LOUISIANA
v.
TONY MOSELY
2008 KA 0172
Court of Appeal of Louisiana, First Circuit.
June 6, 2008.
NOT DESIGNATED FOR PUBLICATION
WALTER P. REED District Attorney Covington, Louisiana Attorney for Plaintiff/ Appellee State of Louisiana.
FREDERICK H. KROENKE, Jr. Baton Rouge, Louisiana, Attorney for Defendant/Appellant Tony Mosely.
Before: GAIDRY, McDONALD and McCLENDON, JJ.
MCDONALD, J.
Defendant, Tony Mosley, was charged by bill of information with two counts of simple burglary, violations of La, R.S. 14:62.[1] After entering pleas of not guilty, defendant was tried before a jury, who found him guilty as charged. The trial court sentenced defendant to serve ten years at hard labor on each count to be served concurrently with each other.
The State subsequently instituted habitual offender proceedings against defendant. At the hearing, defendant admitted the allegations contained in the multiple bill. The trial court adjudicated defendant as a third felony habitual offender. After vacating defendant's original sentence on Count One, the trial court resentenced defendant to a term of eighteen years at hard labor without benefit of probation, parole, or suspension of sentence.
Defendant appeals, citing the following assignments of error:
1. A rational trier of fact could not conclude that the State proved the essential elements of the crime beyond a reasonable doubt and, therefore, the evidence was insufficient to find defendant guilty.
2. The trial court erred in denying the defendant's motion to suppress the evidence.
We affirm defendant's convictions, habitual offender adjudication, and sentence as to Count Two. Because we have found a sentencing error with respect to defendant's habitual offender sentence (enhanced Count One), we amend that sentence, and affirm the sentence as amended.

FACTS
On February 24, 2007, Karen Landry was working as the acting store manager of the Office Depot on Gause Boulevard in Slidell. Landry was emptying tills at a register in the front of the store, when she noticed a black male in a wheelchair approach from the store's center aisle, make a big loop, then approach again. Landry asked the man if he needed any assistance and he replied he did not. Landry testified that something about the man gave her a strange feeling, as if something was not right. The man in the wheelchair proceeded down the center aisle back towards the merchandise area.
Angelle Noullet, another employee of Office Depot, was standing at the front of the store behind a register. She noticed a black male in a wheelchair approach her and ask where the nearest pharmacy was located. Noullet directed the man to the end of Gause Boulevard where a CVS pharmacy and a Walgreens pharmacy were located. Noullet noticed that the man in the wheelchair never stopped moving toward the exit as she provided directions.
A short time later, Landry entered the employee lounge, located in the rear of the store directly across the hall from the men's restroom, to retrieve something from her purse. Employees stored their personal belongings in lockers in the employee lounge. Landry noticed that the lock on her locker had been cut and was on the ground. When Landry opened her locker, she discovered that her purse was missing.
Landry notified other employees to check their belongings. Noullet then discovered that the locker containing her purse had been cut open, and that her purse was missing.
Landry contacted the police, and Corporal Corey Pertuit of the Slidell Police Department was dispatched to the scene. After he arrived, Corporal Pertuit spoke with Landry and Noullet, who reported that their lockers had been broken into and their purses stolen. Corporal Pertuit learned that both Landry and Noullet were missing credit cards and checkbooks.
Based on his interviews of Landry and Noullet, Corporal Pertuit proceeded to the CVS pharmacy in search of the man in the wheelchair. Upon his arrival, Corporal Pertuit spoke with Joshua Olsen, a clerk. Olsen reported that two black males, one in a wheelchair, had just made purchases of two gift cards. According to Olsen, the men left and appeared to be going in the direction of the Walgreens Pharmacy.
After Corporal Pertuit left Office Depot, Landry and Noullet found their purses in the trash bin inside the handicapped stall of the men's restroom, located directly across the hall from the employee lounge. Landry contacted one of her credit card companies to report the card as stolen and was informed that a charge had just been made at a CVS pharmacy. Landry then notified the police of this information.
In the meantime, Corporal Pertuit proceeded to Walgreens. After he arrived, he observed a black male in a wheelchair being pushed by another black male. The two men were near the entrance of the store. Corporal Pertuit approached the men and advised them he wanted to speak with them about a burglary. Corporal Pertuit also advised both men of their Miranda rights.
According to Corporal Pertuit, both men seemed "a bit bothered" that he was speaking to them. Corporal Pertuit asked the men where they were headed and where they were coming from. While speaking to the men, Corporal Pertuit observed a mesh bag hanging from the back of the wheelchair. Corporal Pertuit could see a pair of bolt cutters inside the bag. Corporal Pertuit was aware that the locks had been cut from Landry's and Noullet's lockers.
Corporal Pertuit asked the man who was standing (later identified as defendant) his name, date of birth, and whether he had any identification. Defendant replied that his name was James Jones, provided a birth date, but stated he did not have any identification document. Due to defendant's nervous behavior, Corporal Pertuit decided to pat him down for weapons. During the patdown, Corporal Pertuit felt a pocket knife, which he secured.
Corporal Pertuit also felt what he believed to be a wallet. During the patdown, defendant kept attempting to turn around and appeared very nervous. In an attempt to confirm defendant's identity, Corporal Pertuit retrieved the wallet like object and discovered it was a checkbook. When he opened the checkbook, Corporal Pertuit discovered it bore the name of Karen Landry, one of the burglary victims.
Corporal Pertuit placed both men under arrest (the man in the wheelchair being identified as Ronnie Noel). Defendant claimed he had found the checkbook on the ground on his way to Walgreens. Corporal Pertuit further searched the men and recovered two CVS gift cards from defendant's pants pocket. Credit cards bearing the names of Landry and Noullet were also recovered from Noel, along with a pair of vise grips that was in the mesh bag on the back of the wheelchair. According to Corporal Pertuit, approximately forty minutes had elapsed from the time he was dispatched to Office Depot until he encountered the two men at Walgreens.
During the booking process, Corporal Pertuit noticed that defendant provided a different birth date than he had earlier. It also appeared that defendant attempted to sign a different name over the name he originally wrote. Corporal Pertuit subsequently learned defendant's name was Tony Mosley.
Defendant did not testify at trial.

SUFFICIENCY OF THE EVIDENCE
In his first assignment of error, defendant argues the evidence is insufficient to support his convictions for simple burglary. Defendant presents a two-fold argument. First, defendant maintains that there is no evidence of a burglary because no structure, as defined by state law, was shown to have been entered. Second, defendant argues that there is no evidence to show he participated in, or had any knowledge of, the theft by Noel (the man in the wheelchair).
The constitutional standard for testing the sufficiency of the evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), is whether or not the evidence, when viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt. This standard is codified in La. C. Cr. P. art. 821. State v. Godbolt, 06-0609, p. 3 (La. App. 1st Cir. 11/3/06), 950 So.2d 727, 730.
The Jackson standard for review is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the trier of fact must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. On appeal, the reviewing court does not determine if another possible hypothesis of innocence suggested by a defendant could afford an exculpatory explanation of the events. State v. Schleve, 99-3019, p. 5 (La. App. 1st Cir. 12/20/00), 775 So.2d 1187, 1192-93, writs denied. XXXX-XXXX (La. 12/14/01), 803 So.2d 983 & XXXX-XXXX (La. 12/14/01), 804 So.2d 647.
Simple burglary is the unauthorized entering of any structure with the intent to commit a felony or any theft therein. See La. R.S. 14:62(A). In the present case, defendant argues that the central issue presented is whether the lockers constituted a "structure" within the meaning of La. R.S. 14:62(A). We disagree.
In discussing the "unauthorized entering" element of the aggravated burglary and simple burglary statutes, the supreme court has stated that an entry with undeclared felonious intent is not "unauthorized" if it is with the knowing and voluntary consent, express or implied, of the owner or occupant of the premises. State v. Smith, 98-2078, p. 8 (La. 10/29/99), 748 So.2d U 39, 1143. In the case of a building that is open to the public, the consent to enter the building at the times when it is open to the public and within the confines designated is implied, regardless of the intent of the person so entering. Although entry into a building open to the public during given hours is considered as an authorized entry with the implied consent of the owner, the implied authority extends only to the designated public areas, and not to private or employees-only areas of the building. State v. Schleve, 99-3019 at pp. 6-7, 775 So.2d at 1193-94.
In the present case, the evidence clearly showed that the lockers were located in the employee lounge, a separate room from the public access areas of Office Depot. The door to the employee lounge was clearly marked "Employees Only." Landry testified that she had not granted any non-employee permission to enter the employee lounge. Thus, under the jurisprudence, the State carried its burden of proof with respect to showing that there was an unauthorized entry of a structure.
Second, defendant argues the State failed to exclude every reasonable hypothesis of innocence, those being that Noel gave the items to defendant, or that defendant found the items. Defendant argues there was no evidence to indicate defendant broke into the lockers or removed items from Landry's and Noullet's purses. Defendant maintains that no one saw him in Office Depot, the purses were recovered in the handicapped stall of the men's restroom, and the bolt cutters used to open the lockers were on the back of the Noel's wheelchair.
In a case involving circumstantial evidence in which the jury has reasonably rejected the defense offered at trial, the reviewing court does not determine if another possible hypothesis has been suggested by defendant that could explain the events in an exculpatory fashion. Instead, the court must evaluate the evidence in a light most favorable to the State and determine if the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. An appellate court is constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases; that determination rests solely on the sound discretion of the trier of fact. State v. Schleve, 99-3019 at pp. 5-6, 775 So.2d at 1193.
Viewing the evidence in the light most favorable to the State, the record reflects that these burglaries were accomplished by the locks or locker itself being cut. One of the credit cards stolen from Landry's purse was a Discover card issued in her name. Shortly after Corporal Pertuit left Office Depot to see if he could locate the man in the wheelchair, Landry contacted the Discover card company to cancel her credit card. During this call, Landry learned that an unauthorized purchase had been made at the nearby CVS pharmacy in the amount of $106.95. Another gift card had been purchased in the amount of $110.28 using Landry's Capital One MasterCard.
Although no one saw defendant in Office Depot, Olsen identified defendant as being with Noel in CVS and purchasing $200.00 worth of CVS gift cards using two different credit cards. Within forty minutes of being dispatched to respond to the burglary complaint, Corporal Pertuit encountered defendant pushing Noel in his wheelchair near the entrance of Walgreens Pharmacy less than a mile from Office Depot. Hanging from the back of Noel's wheelchair was a mesh bag containing a pair of bolt cutters and a pair of vise grips. After explaining that he wanted to speak with defendant and Noel about a recent burglary, defendant and Noel both appeared "bothered" by having to speak to the police officer. Defendant provided Corporal Pertuit with false information regarding his identity and appeared very nervous during the weapons patdown. A checkbook bearing Landry's name, reported as having been stolen from her purse, was recovered from defendant's pocket.
Detective Garrett Aucoin of the Slidell Police Department transported only the defendant following his arrest. After delivering defendant to jail, Detective Aucoin found a Discover card bearing Landry's name on the back passenger floorboard of his unit.
Possession of recently stolen property is not by itself sufficient proof that the possessor committed the burglary. State v. Brown, 445 So.2d 422, 423 (La. 1984). However, "lying" has been recognized as indicative of an awareness of wrongdoing. State v. Alpaugh, 568 So.2d 1379, 1384 (La. App. 1st Cir. 1990), writ denied, 572 So.2d 65 (La. 1991).
Viewing the evidence in the light most favorable to the prosecution, we find the evidence allows a rational fact finder to conclude defendant was involved as a principal in the burglaries. Moreover, we find that the State sufficiently negated defendant's alternate but contradictory hypotheses of innocence that he found the stolen items, or that Noel stole the items and gave them to him. Under the circumstances of this case, the evidence sufficiently supports defendant's convictions for both counts of simple burglary.

MOTION TO SUPPRESS
In his second assignment of error, defendant argues the trial court erred in denying his motion to suppress the evidence found on his person (Landry's checkbook). Specifically, defendant contends that Corporal Pertuit admitted that while conducting the weapons patdown, he felt and removed a wallet-like object in the rear-pants pocket of the defendant, knowing that this wallet-like object was not a weapon. Thus, defendant urges this item was improperly seized and should have been suppressed.
The State bears the burden of proving the admissibility of evidence seized during a search without a warrant. La. C. Cr. P. art. 703(D). A search conducted without a warrant is per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).
One such exception to this rule is that a search may be conducted without a warrant when it is an incident to a lawful arrest. United States v. Robinson, 414 U.S. 218, 224, 94 S.Ct. 467, 471, 38 L.Ed.2d 427 (1973); Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). It is axiomatic that an incident search may not precede an arrest and serve as part of its justification. Sibron v. New York, 392 U.S. 40, 63, 88 S.Ct. 1889, 1902, 20 L.Ed.2d 917 (1968). Where probable cause does not exist until after the search, the search cannot be justified as incident to a lawful arrest. Sibron v. New York, 392 U.S. at 62-63, 88 S.Ct. at 1902-03.
However, when probable cause to arrest does exist and "the formal arrest followed quickly on the heels of the challenged search of petitioner's person," the United States Supreme Court has not found it "particularly important that the search preceded the arrest rather than vice versa." Rawiings v. Kentucky, 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980). Naturally, the fruits of the search cannot be necessary to support the probable cause to arrest, Rawiings v. Kentucky, 448 U.S. at 111 n. 6, 100 S.Ct. at 2564 n. 6. If an arrest is justified before the search, it is not unreasonable for the search to be made before instead of after the arrest. State v. Melton, 412 So.2d 1065, 1068 (La. 1982). It is well established searches incident to arrest conducted immediately before formal arrest are valid if probable cause to arrest existed prior to the search. State v. Sherman, XXXX-XXXX, pp. 8-9 (La. 4/4/06), 931 So.2d 286, 292.
A peace officer may lawfully arrest a person without a warrant when he has reasonable (probable) cause to believe that the person to be arrested has committed an offense. La. Code Crim. P. art. 213. Probable cause to arrest exists when facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. Although mere suspicion cannot justify an arrest, the officer does not need sufficient proof to convict. Probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Lumpkin, 01-1721, pp. 3-4 (La. App. 1st Cir. 3/28/02), 813 So.2d 640, 644, writ denied, 02-1124 (La. 9/26/03), 854 So.2d 342.
In the present case, we examine whether there was probable cause to arrest defendant prior to Corporal Pertuit removing the wallet-like object (Landry's checkbook) from defendant's pants pocket. The record reflects that Corporal Pertuit learned the lockers in the employee lounge had either had their handles or their locks cut off. The victims both mentioned that a suspicious black male in a wheelchair, who obtained information regarding the closest pharmacies, had been seen in the store shortly before the burglaries were discovered. After arriving at CVS, the closest pharmacy, Corporal Pertuit learned a man in a wheelchair was previously in the store, accompanied by another black male, approximately 5'8" tall and weighing about 180 pounds (defendant). The clerk at CVS reported to Corporal Pertuit that defendant purchased two gift cards valued at $100.00 each, using two different credit cards. The two men were seen leaving CVS and heading in the direction of the Walgreens pharmacy.
Corporal Pertuit proceeded to Walgreens and encountered both men near the entrance within forty minutes of his initial dispatch. Corporal Pertuit approached the men and advised them that he wanted to speak with them about a recent burglary and read them their Miranda rights. The men became bothered and nervous. Corporal Pertuit also observed a mesh bag hanging from the back of Noel's wheelchair containing a pair of bolt cutters.
At that point in time, it is clear that the facts and circumstances within Corporal Permit's knowledge were sufficient to justify a belief that defendant and Noel had been involved in the burglaries at Office Depot located less than a mile away, and which had been reported within the hour. Accordingly, we find that Corporal Pertuit had probable cause to arrest defendant prior to conducting the pat down search that led to the discovery of Landry's checkbook. This search did not violate defendant's Fourth Amendment rights, and the trial court's denial of defendant's motion to suppress was proper.

SENTENCING ERROR
As required by La. Code Crim. P. art. 920(2), a review has been made of the record in this case, and a sentencing error has been discovered. In sentencing defendant following his habitual offender adjudication, the trial court imposed a term of eighteen years at hard labor without benefit of probation, parole, or suspension of sentence. This sentence is not authorized by statute. The Habitual Offender Law provides, "Any sentence imposed under the provisions of this Section shall be without benefit of probation or suspension of sentence." La. R.S. 15:529.1(G). We also note the penalty provision for simple burglary does not bar parole eligibility. See La. R.S. 14:62(B). Accordingly, the trial court was not authorized to impose any sentence under defendant's habitual offender adjudication without benefit of parole.
The sentence imposed by the court pursuant to the Habitual Offender Law on Count 1 insofar as it denied the defendant to right to parole eligibility is illegal. Therefore, we amend the sentence on count lto provide that defendant is sentenced to eighteen years at hard labor without benefit of probation or suspension of sentence. In all other respects the convictions and sentences are affirmed.
CONVICTIONS, HABITUAL OFFENDER ADJUDICATION, AND SENTENCE ON COUNT 2 AFFIRMED; SENTENCE FOR HABITUAL OFFENDER ADJUDICATION (COUNT 1) AMENDED AND AS AMENDED AFFIRMED.
McCLENDON, J., agree in part and dissent in part and assigns reasons.
I respectfully agree with the report in all respects except on the issue of the error in sentencing. Correction of this sentence lies within the trial court's sentencing discretion, thus, I would have remanded for resentencing.
NOTES
[1] Ronnie Noel was charged as a codefendant in the same bill of information; however, Noel was not tried in the instant proceeding.